(No. 28172.— )
THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* HARRY MINOR, Plaintiff in Error.

*Opinion filed November 22, 1944.*

W. G. ANDERSON, (ELWYN E. LONG, of counsel,) both of Chicago, for plaintiff in error.

GEORGE F. BARRETT, Attorney General, and THOMAS J. COURTNEY, State's Attorney, of Chicago, (EDWARD E. WILSON, JOHN T. GALLAGHER, MELVIN S. REMBE, and EDMUND H. GRANT, all of Chicago, of counsel,) for the People.

Mr. JUSTICE WILSON delivered the opinion of the court:

The defendant, Harry Minor, was indicted in the criminal court of Cook county for the robbery of twenty-two dollars, a wrist watch and a purse, by force and intimidation, from a young woman. A jury found him guilty, as charged. Motions for a new trial and in arrest of judgment were overruled, and defendant was sentenced to the

penitentiary for an indeterminate term of not less than one nor more than twenty years imprisonment. Minor prosecutes this writ of error.

From the undisputed testimony it appears that on June 17, 1942, the prosecuting witness, employed by the W.P.A., left her place of employment about eight o'clock, P.M. She repaired to a dentist's office for treatment. Afterwards, she went as far as the intersection of South Jeffery avenue and Eighty-third street by streetcar. Shortly before midnight, while walking the remaining short distance to her residence, she was seized by a light-skinned colored man, whom she described as being five feet seven inches tall, weighing about one hundred sixty pounds, whose front teeth were gold, between thirty-four to forty years of age, with thinned, fuzzy, graying hair, and wearing dark, dirty clothes. Her assailant forced her into a prairie where he subjected her to a brutal attack. The neighborhood in this vicinity, although illuminated by street lamps, is admittedly desolate. We deem unnecessary a detailed narration of the attending facts and circumstances except those relevant to the contentions urged in support of a reversal of the judgment of conviction. According to the prosecutrix, the man, prior to beating her about the head and body, announced, "I am going to rape you, and then strangle you to death; you are not going to live to tell anybody; you got too good a look at me." In obedience to his command, she removed her wrist watch. During the course of the struggle, she seized his scrotum and attempted "to pull it off of him." She knocked his cap off, and then lost consciousness. About 1:45 o'clock, A.M., on June 18, she arrived at her residence. Her clothing was muddy and torn, and her hands were covered with blood. Later, about five or five-thirty o'clock in the morning, she returned to the scene of the crime where she found her undergarments which she had removed, when so ordered, and, also, a cap, identified as People's exhibit 4, the one she knocked off her

assailant's head. The underclothes, together with other articles of wearing apparel, were admitted in evidence as a group exhibit. The prosecuting witness reported the occurrence to the police about eleven o'clock the same morning. She testified that she never regained either the watch or the purse, the latter, containing more than twenty dollars, being on the ground when last seen by her.

Between 3:15 and 3:45 A.M., on June 18, the defendant, wearing the uniform of a United States mail carrier, appeared at the South Chicago Community Hospital for emergency treatment. The nurse in attendance described his injury as a partial evulsion or tearing away of the tissues of the scrotum, consisting of a three-inch laceration. Hospital records, introduced in evidence, disclose that treatment, including sutures, was administered.

James Little, a sergeant of police, testified that after various unsuccessful attempts by the police to locate the defendant, he appeared, on June 27, at the South Chicago station, accompanied by two lawyers; that, in defendant's presence, the lawyers announced they had brought him in to surrender, stating they desired the complaining witness to view him; that they did not want defendant "pushed around," and that if she, the prosecuting witness, failed to identify him, he was to be released. Little further testified that when the prosecutrix appeared she pointed to defendant and said, "You are the man who assaulted me and raped me," and that defendant replied, "That is what you think." Upon the trial, she also positively identified defendant as her assailant.

From defendant's testimony it appears that at the time of the trial he was forty-six years of age and had been a postal employee of the United States for twenty-two and one-half years, but that, subsequent to June 17, 1942, he resigned his position and withdrew his pension money. He did not resume his duties as a mail carrier after the day

named. Defendant denied participation in the robbery. He also denied ownership of the cap picked up on the prairie on June 18 by the victim of the assault and robbery. He stated that he was separated from his wife until June, 1942, when a reconciliation was effected. Admitting that he had been mutilated, he testified that his injuries were caused by one Rebecca Hunt, whom he had known about three years and in whose apartment, "I was supposed to be a roomer, but we were sweethearting;" that, on the evening of June 17, he arrived at her residence about 7:30 P.M.; that he immediately retired and slept until about 2:30 o'clock the next morning when he was awakened and Rebecca Hunt was standing beside the bed with a half-gallon bottle of beer urging him to "Awake up, let's drink and have some fun;" that two white men accompanied her, one with whom he was acquainted; that he refused, remonstrating he had to report for work early; that the woman was intoxicated, and, upon her continued insistence to join her and her companions, he pushed her away, and that, as he did so, she reached over and inflicted the injuries mutilating him. According to defendant, he immediately donned his mail carrier's uniform and proceeded to the South Chicago Community Hospital where seventeen stitches were taken in his wound.

Rebecca Hunt, on behalf of the People, testified that she did not see defendant the night of June 17, 1942, or the early morning of June 18, and disclaimed responsibility for his injury. She added that he told her he had been cut.

To obtain a reversal, defendant contends that his identification by the complaining witness was insufficient. In particular, defendant asserts the incapacity of himself, or anyone else, to commit rape after receiving the serious injuries previously described. Defendant was not charged with rape, and proof of forcible rape is wanting. Consequently, the issue of incapacity is not presented by the

record made. Next, he urges that but little weight attaches to an identification where one under arrest is brought alone before a prosecuting witness who knows that the person arrested is to be presented for this purpose. The prosecuting witness viewed defendant at the time of his surrender at the instigation of the attorneys then representing him. The law does not require that the People must place a defendant among a group of persons for the purpose of testing whether an identifying witness can point him out as the guilty party. (*People* v. *Barad,* 362 Ill. 584.) As we observed in the case cited, *"People* v. *Crane,* 302 Ill. 217, is not to be so construed." The testimony of one witness as to identification, if positive and the witness credible, is sufficient to convict even though the testimony is contradicted by the accused. (*People* v. *Eckman,* 380 Ill. 413; *People* v. *Bloom,* 370 Ill. 144; *People* v. *Kerbeck,* 362 Ill. 251; *People* v. *LeMar,* 358 Ill. 58; *People* v. *Fortino,* 356 Ill. 415.) Apart from his actual identification, other evidentiary circumstances linking him with the assault and robbery charged are more than coincidental, namely, his appearance at an early hour in the morning of June 18, 1942, at the hospital, suffering with injuries identical to those inflicted by the prosecutrix upon her assailant, his dubious explanation of the manner in which he sustained the wound, and the disclaimer by Rebecca Hunt of responsibility for his condition.

Secondly, defendant maintains that reversible error was committed in allowing the People, over his objection, to introduce details of an alleged forcible rape committed by him on the complaining witness. This contention is not well taken, no evidence concerning the details of any rape having been adduced by the People. The initial inquiry designed to elicit information that a rape had been perpetrated was propounded by defense counsel upon cross-examination of the complaining witness. Previously, how-

ever, she had testified to certain statements attributed to her assailant to the effect that he intended to rape her. These, and other statements of a similar nature made by her, were competent even though they tended to show him guilty of another and distinct offense. The test of the admissibility of evidence is whether it fairly tends to prove the particular offense charged. Evidence of other crimes is admissible if it tends to identify the accused as the person who committed the particular crime under investigation, to show his presence at the scene of a crime when an alibi is interposed, and to prove design, motive or knowledge where these matters are in issue or relevant. *People v. Kasallis,* 385 Ill. 158; *People v. Eckman,* 380 Ill. 413.

Finally, defendant insists that the evidence does not sustain his conviction. The testimony recounted conclusively demonstrates that the prosecuting witness was compelled by her assailant to turn over to him her wrist watch which she, herself, removed; that when she last saw her purse, containing more than twenty dollars, it was on the ground, and that, upon her return to the scene of the crime three hours afterwards, ostensibly to locate the defendant's cap which she had knocked off during her struggle with him, the purse and its contents were missing. The foregoing and other testimony established beyond a reasonable doubt the crime of robbery by force. The jurors heard and saw the witnesses and had the opportunity to evaluate their testimony, including the identification of the accused. Defendant received a fair trial, the record is remarkably free from error, and proof of guilt is overwhelming.

The judgment of the criminal court of Cook county is affirmed.

*Judgment affirmed.*