JAMES De WITT SCOTT, Appellant, *v.* THE STATE
OF NEVADA, Respondent.

No. 3804

March 22, 1956.                                    295 P.2d 391.

*Martin J. Scanlan,* of Reno, for Appellant.

*Harvey Dickerson,* Attorney General, of Carson City,
and *A. D. Jensen,* District Attorney, *Emile J. Gezelin,*
Assistant District Attorney, both of Reno, for Respond-
ent.

## OPINION

By the Court, BADT, J.:

Appellant was convicted of willfully and lewdly committing a lewd or lascivious act upon the body of a girl aged 8½ years. Section 10143, N.C.L.1943–1949 Supp. While numerous errors are assigned in support of his appeal, his main assignments are: (1) insufficiency of the evidence to support the verdict, and (2) errors in the giving and refusal of instructions to the jury. We first dispose of these assignments and then discuss the other questions raised.

(1) It is unnecessary to discuss the facts in detail. The offense occurred August 20, 1953, on the outskirts of Reno. The child was playing with a boy companion

aged 10 years in the neighborhood of a ditch and bulrushes not far from the road when the defendant drove up, entered into a conversation with the children, sent the boy to a store a few blocks away to purchase soda pop and during the boy's absence was alleged to have performed the lewd act. As defendant was driving off in his car, the girl's mother, with a friend, drove up in her car and the little girl ran to her mother complaining of what had been done. The mother followed defendant's car, obtained the license number and reported same to the police. Identification of defendant by the girl and by the boy and identification of the defendant's car by the mother and her companion were definite and convincing to the jury. Defendant denied the entire episode and asserted that on August 20, 1953, the day of the crime, he had not been in Reno but had left his home in Fallon, driven to Fernley and Lovelock on business matters and returned home in the evening. In support of this alibi he produced a number of witnesses and other evidence supporting the fact that he had been in Fernley and Lovelock on August 20. Further examination of such evidence and rebuttal evidence adduced by the state convincingly showed that his presence in Lovelock and Fernley was not on August 20 but was on the following day, August 21, 1953. There was ample evidence to support the jury's rejection of the alibi. Defendant also produced numerous witnesses who testified to his good character and reputation in the community. The verdict indicates the jury's conclusion that this was outweighed by the positive evidence of defendant's guilt.

Appellant's attack on the sufficiency of the evidence has to do mainly with the credibility of the testimony given by the girl and by her boy companion. The girl was, as noted, $8\frac{1}{2}$ years old at the time of the incident. She was 9 years old at the time she testified at the trial. Before she was called to the stand, one of her teachers testified to the girl's excellence as a student, being in

the upper 25% of her class, with an I. Q. of 120, and far ahead of her class in achievement. The teacher was cross examined at considerable length as to the girl's powers of observation and perception and her ability to describe what she had perceived. That she was a competent witness satisfactorily and definitely appeared not only from the teacher's testimony but from her own testimony. Before the little girl was sworn, she was questioned at considerable length by the respondent,. by the appellant and by the court. After she had testified to what happened, the record shows 65 pages of cross examination. Virtually the same situation, but even to a more convincing degree, applies to the boy, who likewise was far ahead of his class both in intelligence and in achievement, with an I. Q. of 140, and who was subjected to a cross examination consuming 140 pages of the transcript. The importance of the boy's testimony lies in his positive identification of appellant, supported by one convincing incident. The appellant first amused the children by performance of a coin trick, in the course of which it was obvious to the boy that one of the man's fingers had a portion missing. This fact he had recited to the authorities before making any identification of the defendant himself. Appellant's assertions that these witnesses were coached, that they were prompted, threatened, coerced and led, that their testimony should not be given credence, that the boy himself was probably guilty of some sex act and was protecting himself, are all without support in the record. It may be noted in addition that the record contains many additional circumstances which support their testimony. No further discussion of the evidence appears necessary.

(2) The court refused to give appellant's requested instruction D 1, as follows: "In this case, the defendant is charged with crime of lewdness and the Court instructs the jury that such a charge is easily made and difficult to disprove and for that reason the testimony of the children who testified in this case should be examined with caution."

It also rejected defendant's requested instruction D 2,

as follows: "You are instructed that in cases of this character you should carefully scan the testimony of the children testifying before reaching a conclusion that the defendant is guilty." Appellant concedes that if instruction D 1 had been given, instruction D 2 was not required but that in rejecting them both, prejudicial error was committed. We treat the two instructions together under the term generally applied—cautionary instructions. In doing this we overlook, for the purpose of argument, the very possible impropriety of applying this instruction to "the children who testified," which couples the testimony of the boy with the testimony of the complaining witness.

In assigning as error the court's refusal to give the requested cautionary instructions, appellant relies on the recent case of People v. McGhee, 123 Cal.App.2d 542, 266 P.2d. 874, 876, in which the California court reversed the judgment of conviction and remanded the cause for a new trial because the trial court had refused to give a cautionary instruction with reference to the testimony of the complaining witness. The case however is clearly distinguishable and undoubtedly called for a cautionary instruction in sex offense cases (1) where the complaining witness' testimony is uncorroborated, as was the case there, (2) the fact that the only available direct witnesses are ordinarily the complaining witness and the defendant, whereby the charge is easy to make and difficult to meet, (3) that such cases arouse passion and prejudice in the minds of decent people, including jurors, and (4) the ease with which the charge can be made to satisfy spite, vengeance, vindictiveness and other base motives. The appellant in that case was charged with pimping. The complaining witness was a prostitute. The facts recited by the court picture a most degrading situation. Referring to the presence of elements indicating the necessity for a cautionary instruction, the court said: "All of these elements are present in this case. * * * The possibility of spite and revenge is suggested by appellant's testimony that he ejected the complaining witness and her pseudo-husband from his hotel.

"* * * The complete absence of corroboration of the complaining witness in any material detail makes it clear that if the jury had been instructed to examine her testimony with caution a different verdict might well have been rendered." In the later case of People v. Quock Wong, 128 Cal.App.2d 552, 275 P.2d 778, a pandering case, the court approved the McGhee case, held that it was error to refuse the cautionary instruction, but concluded that such error was not prejudicial, as there were no inconsistencies in the prosecuting witness' testimony. It was not inherently improbable and was strengthened and partly corroborated by other evidence. The case is not in point on the facts nor do we feel that any statements there made by the court strengthen the assignment of error.

Without further discussing the numerous cases cited by the appellant and by the state and without in any way detracting from those cases holding, under their facts and circumstances, that it was error to refuse a cautionary instruction, and confining our conclusion to the facts of this case in which the competency of the complaining witness was firmly established, likewise the competency of the boy who also identified the defendant, the corroborating evidence as to the license number and description of the defendant's car as he left the scene, the lack of any inherent incredibility in the testimony, the entire lack of any elements of spite, vengeance, vindictiveness or other base motives, coupled with the full instructions given by the court as to the credibility of witnesses and the necessity for proof beyond a reasonable doubt, we are satisfied that there was no error in the refusal to give the cautionary instructions. See annotation to People v. Lucas, 16 Cal.2d 178, 105 P.2d 102, appearing at 130 A.L.R. 1489, 1491.

(3) Appellant next assigns error in the court's refusal to give his requested instruction D 6, as follows: "You

are instructed that generally speaking, if two theories can be reasonably deduced from the evidence, one leading to a conclusion of innocence and one to guilt, the jury should adopt the theory leading to innocence and acquit the defendant." We are not concerned with the propriety of such an instruction where the proof is entirely circumstantial. There was no error in refusing the instruction in view of the direct evidence in this case. People v. De Voe, 123 Cal.App. 233, 11 P.2d 26; People v. Ortiz, 63 Cal.App. 662, 219 P. 1024; People v. Marvich, 44 Cal.App.2d 858, 113 P.2d 223. And see People v. Bonds, 1 Nev. 33.

(4) Error is also assigned in the court's refusal to give the defendant's requested instruction D 7. The requested instruction dealt generally on the credibility of witnesses, admittedly covered by other instructions given by the court, and then contained these paragraphs:

"The defendant has testified in his own behalf. The law says that you shall scrutinize closely his evidence of his interest in the final determination of the case.

"If, after you do so, you find that he is a worthy witness, then you can give his evidence such weight as you would any other credible witness, or such weight as you see fit."

We find no error in refusing this instruction. It is prohibited by the provisions of sec. 10959, N.C.L.1943–1949 Supp., to the effect that "no special instruction shall be given relating exclusively to the testimony of the defendant, and further provided, that the giving of such special instruction shall constitute reversible error." State v. Fitch, 65 Nev. 668, 200 P.2d 991. The court also rejected defendant's proposed instructions D 3, D 4 and D 9, which, without further discussion, we may say were fairly covered by instructions given. The

rejected instructions would further have enlarged upon the definition of reasonable doubt contrary to the prohibition contained in sec. 10964, N.C.L.1929. Exception is also taken to the court's rejection of requested instruction D 8. The salient matters were covered in instructions given. The rejected instruction also would have told the jury that it might consider previous good character as a circumstance to rebut "the presumption of guilt arising from circumstantial evidence." The evidence was not circumstantial and there was of course no presumption of guilt.

(5) Appellant attacks the issuance of the "John Doe" warrant in this case and the subsequent insertion by Lieutenant Brodhead, of the Reno police, of appellant's name. He asserts that a police officer has no authority to issue or change a warrant, that the magistrate was therefore without jurisdiction to hold the preliminary hearing, that the whole proceeding was void and that its invalidity was carried forward into the trial to the end that appellant was deprived of his constitutional rights both under the Nevada and federal constitutions. We find no merit in this contention. Whether or not the insertion of appellant's name by the police officer in the John Doe warrant was authorized under the provisions of secs. 10728 and 10733, N.C.L.1929, we may note, first, that this asserted invalidity in the proceedings does not appear to have been urged either before the magistrate or before the district court and, secondly, that the present attack involves no constitutional question. There can be no question but that a proper foundation was laid for the filing of the information against appellant. State v. Plunkett, 62 Nev. 265, 149 P.2d 101.

(6) Appellant complains bitterly of the manner of his identification by the little girl. He was identified when accompanied by only one other person, whom the witness knew to be an officer, and was not identified in company

with a number of other persons of not too dissimilar personality. Appellant quotes Professor Edwin M. Borchard's "Convicting the Innocent" in referring to tragic examples of mistakes in identification and Professor Wigmore in his recommendations of the accepted "line-up" method of identification. He also quotes Nevada newspapers reciting the near tragedy of a case subsequently dismissed by the attorney general when the real culprit confessed. While we agree that every precaution should be taken against a possible miscarriage of justice, we can find no error in law in the jury's acceptance of the identification of defendant by the two child witnesses, in the manner appearing in the record and without use of the "line-up" method. People v. Minor, 388 Ill. 436, 58 N.E.2d 21.

(7) Throughout appellant's voluminous opening and closing briefs are found numerous charges of unfair methods used by the state in the prosecution of the case. We find none of these charges justified.

There being no error, and there being amply sufficient evidence to support the verdict, the judgment and order denying new trial are affirmed.

MERRILL, C. J., and EATHER, J., concur.