TERRY MICHAEL BAILS, APPELLANT, *v.* THE STATE OF NEVADA, RESPONDENT.

No. 7687

February 13, 1976          545 P.2d 1155

Raymond E. Sutton, of Las Vegas, for Appellant.

*George E. Holt,* District Attorney, and *Daniel M. Seaton,* Deputy District Attorney, and *Sherman H. Simmons,* Deputy District Attorney, Clark County, for Respondent.

## OPINION

By the Court, THOMPSON, J.:

A jury convicted Terry Michael Bails of first degree murder and he has been sentenced to prison for life with the possibility of parole. The evidence pointing to guilt was wholly circumstantial in character, but is not assailed as insufficient. Bails does contend, however, that prejudicial error occurred when the court refused to instruct the jury in a certain way about circumstantial evidence, and that prejudicial evidence was erroneously received.

1. The court was requested to instruct the jury that "if the evidence is susceptible of two reasonable interpretations, one of which points to the defendant's guilt and the other to his innocence, it is your duty to adopt that interpretation which

points to the defendant's innocence, and reject the other which points to his guilt." The request was refused and such refusal is assigned as error.

We have heretofore considered such an instruction in cases involving both direct and circumstantial evidence and have ruled that it is not error to refuse to give the instruction if the jury is properly instructed regarding reasonable doubt. Hall v. State, 89 Nev. 366, 513 P.2d 1244 (1973); Anderson v. State, 86 Nev. 829, 477 P.2d 595 (1970); see also: Scott v. State, 72 Nev. 89, 295 P.2d 391 (1956); Kuk v. State, 80 Nev. 291, 392 P.2d 630 (1964); Crane v. State, 88 Nev. 684, 504 P.2d 12 (1972); Vincze v. State, 86 Nev. 546, 472 P.2d 936 (1970); Kovack v. State, 89 Nev. 364, 513 P.2d 1225 (1973); McKinney v. State, 89 Nev. 556, 516 P.2d 1404 (1973). We have also held it permissible to give the instruction in such a case. Crane v. State, supra. However, in each of the cited cases there was direct testimonial evidence of guilt.

It is the appellant's contention that when all of the evidence is circumstantial in character, the court is compelled to give the instruction in order to insure fair jury consideration of the case. We do not agree. The leading case on this precise point is Holland v. United States, 348 U.S. 121 (1955), which we have cited with approval on at least three occasions. See: Vincze v. State, supra; Kovack v. State, supra; Hall v. State, supra. In Holland, a wholly circumstantial evidence case, the court wrote: "The petitioners assail the refusal of the trial judge to instruct that where the government's evidence is circumstantial it must be such as to exclude every reasonable hypothesis other than that of guilt. There is some support for this type of instruction in the lower court decisions (citations), but the better rule is that where the jury is properly instructed on the standards for reasonable doubt, such an additional instruction on circumstantial evidence is confusing and incorrect (citations).

"Circumstantial evidence in this respect is intrinsically no different from testimonial evidence. Admittedly, circumstantial evidence may in some cases point to a wholly incorrect result. Yet this is equally true of testimonial evidence. In both instances a jury is asked to weigh the chances that the evidence correctly points to guilt against the possibility of inaccuracy or ambiguous inference. In both, the jury must use its experience with people and events in weighing the probabilities. If the jury is convinced beyond a reasonable doubt, we can require no more."

In the case before us the jury was properly instructed on the standards for reasonable doubt. In line with Holland, we hold that it was not error to refuse the requested instruction.

2. Over objection, the court allowed the prosecution to introduce evidence of the defendant's use of narcotics. This evidence was received under the authority of NRS 48.045(2): "Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." The court reasoned that such evidence was probative of identity and motive, and that the probative value thereof outweighed its prejudicial effect in this instance. The jury was properly instructed as to the limited purposes for which the evidence was received. Brown v. State, 81 Nev. 397, 400, 404 P.2d 428 (1965).

As already stated, the evidence of guilt was wholly circumstantial. A third person did not witness the homicide. The defendant did not confess his guilt nor did he utter incriminating statements to anyone. He testified at the trial stating that he was elsewhere when the killing occurred. His testimony was corroborated. However, incriminating circumstances placed him at the crime scene.

The victim was Mildred Nosler. It is asserted that she was killed on November 11, 1972, at her home in Las Vegas. Her body was found two days later. It was necessary to force entry into the home since it was tightly secured. In the opinion of the pathologist the primary cause of death was a massive hemorrhage about the heart due to penetrating stab wounds of the lung and heart. The secondary cause of death was extensive brain damage with hemorrhage caused by a heavy blunt instrument.

A broken knife was found near the victim. The pieces fitted together. A paper towel was recovered in the kitchen. It had been wet with water and blood and had dried in the shape of a finger. The defendant had cut his right ring finger seriously enough to cause bleeding. When he was arrested on November 16, the cut was still unscabbed. The defendant had Type A blood and the blood on the paper towel also was Type A. About 42 percent of the population has Type A blood. Blood on the knife was determined to be Type O. The victim had Type O blood. About 45 percent of the population has Type O blood.

During autopsy, the pathologist removed a small plastic fragment from the victim's brain. It was determined that this fragment came from the support column of the telephone found beside the victim's body. The defendant's fingerprint in blood was found on the base of the telephone. Type A blood was found on the telephone in the recessed area around the cradle. Type O blood was found in the area of the broken fragment.

The victim collected two-dollar bills. The defendant admitted having two two-dollar bills in his possession on November 11.

Finally, the evidence discloses that the victim was most conscious of the security of her home. She had multiple locks on all three doors and would seldom allow anyone to enter except her son, his girl friend, and the defendant. Her son and the defendant were best friends. Her son, of course, had a key, as did his girl friend. Her son and the defendant lived together in her home until May 8, 1972, when her son was sent to prison for larceny.

The defendant testified that his finger was cut two days after the homicide when cleaning a lettuce slicer at the sandwich shop where he was employed. He explained his fingerprint on the telephone since he had used the phone when visiting the victim on November 9, two days before the homicide.

We have related the circumstantial evidence in order to show the framework within which the trial judge had to evaluate the proffered evidence of collateral offenses.

The court allowed the victim's son to testify that he and his best friend, the defendant, were addicted to the use of drugs, and that prior to the son's departure for prison on May 8, 1972, the defendant had been living with him in the victim's home and knew of hiding places therein where drugs and drug paraphernalia were kept. Such testimony related to a period of time some six months before the homicide. Moreover, the son was permitted to testify that about eleven months after the homicide he went with law officers to the victim's home and pointed out where he had hidden drugs and paraphernalia, some of which was, at that time, recovered and received in evidence. This testimony was corroborated by other witnesses.

In this wholly circumstantial evidence case, it was important to show a motive for the killing and, of course, the identity of the murderer. The only piece of evidence which placed the defendant at the scene of the crime was his fingerprint on the telephone, and the evidence was in conflict as to when it was

placed there. The proffered testimony as to the defendant's drug addiction and his knowledge of the hiding places inferentially supplied a reason for him to have been there on the day of the homicide, and to identify him as the perpetrator since he was one who could have penetrated the security of the victim's home without forcing an entry.

In our view it was permissible for the court to receive such evidence since other circumstantial evidence had not substantially established either motive or identity. Jones v. State, 85 Nev. 4, 5, 6, 448 P.2d 702 (1969); cf. Tucker v. State, 82 Nev. 127, 412 P.2d 970 (1966). The time remoteness of such evidence in relation to the date of the homicide impeached its weight to some degree, but not its admissibility. In the context of this case the trial judge properly could conclude that the probative value of evidence of collateral offenses outweighed the prejudicial effect thereof.

3.    The court allowed a friend of the victim to relate a conversation with her which occurred two days before the homicide during which conversation the victim had mentioned her two-dollar bill collection and that she had not deposited the bills in her safe-deposit box.

Such hearsay was permitted on the basis of NRS 48.064: "Transactions or conversations with or actions of a deceased person are admissible if supported by corroborative evidence."

The victim's collection of two-dollar bills and her failure to deposit them in her safe-deposit box was corroborated by other witnesses. The conversation was, therefore, admissible if relevant. The relevance here was the possible relationship between the victim's collection of two-dollar bills to the possession of two such bills by the defendant on the day of the homicide. The trial court properly received the testimony.

4.    Other assigned errors lack merit.

Affirmed.

ZENOFF and MOWBRAY, JJ., concur.

GUNDERSON, C. J., and BATJER, J., dissenting:

We would remand for a new trial.

From appellant's drug use some six months prior to the killing in question, the trial court permitted the prosecution to suggest the inference that appellant remained a narcotic user.

From the inferred fact that appellant remained a narcotic user, the prosecution was permitted to suggest the further inference that appellant had a present need for narcotic paraphernalia.

From a showing that the victim's son had hidden narcotic paraphernalia in his mother's home with appellant's knowledge, and from the supposition that appellant had a need for the paraphernalia, the prosecution was permitted to suggest the further inference or supposition that such need provided a motive for the entry of Mrs. Nosler's home.[1]

From the inferred fact or supposition that appellant had a motive to invade Mrs. Nosler's home to satisfy his supposed continuing habit, the prosecution was permitted to suggest the further inference that he did so.

From the inferred fact or supposition that appellant invaded the victim's home to satisfy his "narcotic habit," the prosecution was permitted to suggest the further inference that, somehow, Mrs. Nosler caught appellant flagrante delicto, that she tried to prevent him from purloining the paraphernalia, and that a fatal altercation ensued between them.

Essentially, the prosecution was permitted to build inference upon inference, to suggest the ultimate inference that appellant was a narcotic user at the time of the killing, and therefore killed Mrs. Nosler while seeking to satisfy his need for drugs.

1. We think such reasoning, by which the prosecution would justify admitting highly inflamatory evidence of appellant's prior drug use, intolerably remote under the weighing process which NRS 48.035 mandates. "To repeat an oft-quoted phrase, this was a case 'where the minute peg of relevancy will be entirely obscured by the dirty linen hung upon it.' State v. Goebel, 36 Wash.2d 367, 218 P.2d 300, 306 (1950), cited in McCormick, supra at 333 n. 28; United States v. Kahaner, supra, 317 F.2d at 472; and Lucero v. Donovan, supra, 354 F.2d at 22 n. 7." DeVore v. United

---

[1]Contrary to the majority opinion, we find nothing in the testimony of the victim's son to indicate that appellant knew where the son had hidden drugs prior to his imprisonment. The victim's son referred repeatedly and solely to "outfits," i.e., the paraphernalia by which addicts administer drugs to themselves. Transcript, pp. 367, 379, 380. Such paraphernalia, the victim's son testified, is easy to obtain. Transcript, p. 379. In fact, the victim's son testified, he never told his friends he had drugs "stashed" at his mother's home, "because I didn't never have that much." Transcript, p. 379. He went on to say: "Well, like friends don't look for your outfits." Transcript, p. 380.

States, 368 F.2d 396 n. 4 (9 Cir. 1966). We find that reasoning process to which the majority accords evidentiary significance no more than rampant speculation. "The right of persons accused of crime to have the evidence confined to the issues on trial cannot be nullified by any such unrealistic hypothesis." Lovely v. United States, 169 F.2d 386 (4 Cir. 1948).

2. We will not attempt to delineate all constitutional problems posed by the majority's ruling. As one writer has noted, "a body of constitutional doctrine concerning the use of prior offenses evidence is in the making. That network of constitutional decisions will very likely form the basis for increasing consideration of the constitutional limits of the use of prior offenses evidence." Bray, *Evidence of Prior Uncharged Offenses and the Growth of Constitutional Restrictions,* 28 U. Miami L. R. 489 (1974). We do, however, wish to notice one constitutional concern, prominent in the case before us.

The United States Supreme Court has held it unconstitutional to stigmatize drug addiction as a crime. Robinson v. California, 370 U.S. 660 (1962). Here, however, the majority in effect hold that a defendant's status as a former drug addict may be shown to stigmatize him as crime-prone, thereby rendering him especially susceptible to conviction whenever other crimes may be charged against him. Cf. United States v. Burkhart, 458 F.2d 201 (10 Cir. 1972). "[A]n obvious truth is that once prior [offenses] are introduced the trial is, for all practical purposes, completed and the guilty outcome follows as a mere formality." Id. at 204.

3. The prosecution suggests any error in admission of the evidence in question is harmless because other evidence linking appellant to the killing is overwhelming. We must reject such a rationale. Even were we to agree that the evidence overwhelmingly linked appellant to the killing, a proper new trial should be ordered. As we understand the majority to recognize, absent evidence of appellant's drug-related activity a conviction for some lesser offense than first degree murder might result.

It is unnecessary to reach other issues.