Delmar PARTIN, Appellant,

v.

COMMONWEALTH of Kentucky,
Appellee.

No. 94–SC–768–MR.

Supreme Court of Kentucky.

March 21, 1996.

S. Clay Bedford, Winchester, for appellant.

A.B. Chandler III, Attorney General, Thomas V. Handy, and Sharon Kay Hilborn, Assistant Attorneys General, Criminal Appellate Division, Frankfort, for appellee.

GRAVES, Justice.

A Knox County jury convicted the appellant Delmar Partin of the murder of his estranged paramour Betty Carnes. From a sentence of life imprisonment he appeals to this court as a matter of right.

Sunday, September 26, 1993, Betty Carnes disappeared from her job site at the Tremco plant in Barbourville. On September 27, 1993, her decapitated body was found in a

fifty-five gallon barrel in the plant laboratory. The autopsy disclosed the cause of death was a blunt-force injury to the head consistent with being struck by a metal pipe that was found in the barrel. Also, Ms. Carnes had bruises on her neck caused by a cord encircling her neck. The Knox County Grand Jury indicted the appellant for the murder of Ms. Carnes.

Appellant raises six issues on appeal. Each issue is addressed in the order presented by appellant.

■ First, appellant asserts the trial court erred in overruling appellant's motion for a directed verdict of acquittal of murder because of insufficient evidence. Appellant claims that there was not sufficient time to perform all the actions alleged by the Commonwealth. In addition, appellant argues that there are no eyewitnesses or forensic evidence to link him to the crime. As a result, he claims that nothing in the evidence exists which points to his guilt more than anyone else having access to the laboratory.

■ On appellate review, the test of a directed verdict is whether under the evidence as a whole it would be clearly unreasonable for a jury to find guilt. Only if that question is answered in the affirmative is a defendant entitled to a directed verdict. *Commonwealth v. Benham*, Ky., 816 S.W.2d 186 (1991); *Commonwealth v. Sawhill*, Ky., 660 S.W.2d 3 (1983).

■ However, "the weight of evidence and the credibility of the witnesses are functions peculiarly within the province of the jury, and the jury's determination will not be disturbed." *Jillson v. Commonwealth*, Ky., 461 S.W.2d 542, 544 (1970); *Leigh v. Commonwealth*, Ky., 481 S.W.2d 75, 79 (1972). *See also, Owsley v. Commonwealth*, Ky.App., 743 S.W.2d 408, 409 (1987). A review of the evidence as a whole indicates that the trial court correctly denied a directed verdict.

■ Second, appellant argues that the trial court erred in allowing testimony concerning Ms. Carnes' alleged fear of appellant.

Prior to offering witnesses who would testify as to Ms. Carnes' fear of appellant, the Commonwealth advised the court of the nature of the testimony. Defense counsel objected on the grounds that the testimony was hearsay under KRE 802 and not relevant under KRE 403. The trial court ruled that witnesses could not testify as to anything said by the appellant to Carnes or the witnesses. The trial court allowed the witnesses to testify concerning their observations of Carnes exhibiting fear of appellant and her statements about that fear. Witnesses only testified as to observations of Carnes, not to anything she said.

Specifically, Ken Carnes (no relation to Betty Carnes) testified that he observed the victim was afraid of appellant. The fear increased over the last six to eight weeks of her life. Ken Carnes testified that "she ... wanted to talk more and more." Barbara Mason, Carnes' partner on the machine, first noticed that Carnes was afraid of appellant in June of 1993. She observed one incident in which Carnes was visibly shaken, crying, trembling, and scared to death after one meeting with appellant. Robert Cornett stated that Carnes appeared afraid after meeting with appellant. Steve Earls, an employee of a local service station, observed Carnes and appellant meeting about one week prior to her murder. He described Carnes as upset and nervous. George Hamil testified that Carnes' schedule was kept confidential and that she exhibited fear. Burton Wilson testified that he gave Carnes' work schedule directly to her instead of displaying it in the rack with the others.

Defense counsel did not cross-examine Ken Carnes, Robert Cornett, and Steve Earls. The witnesses did not testify about Betty Carnes' statements to them. Their testimony consisted only of observations of fear exhibited by Carnes toward the appellant.

The question before this Court is whether testimony concerning observations made by witnesses of Carnes' alleged fear of appellant is hearsay pursuant to KRE 801 and/or whether such testimony is relevant pursuant to KRE 401 and KRE 403.

KRE 801(c) provides as follows: " 'Hearsay' is a statement, other than one made by declarant while testifying at the trial or hearing, offered in evidence to prove the truth of

the matter asserted." A statement pursuant to KRE 801(a) is: "(1) An oral or written assertion; or (2) Nonverbal conduct of a person, if it is intended by the person as an assertion." This testimony did not contain an oral or written assertion made by Carnes. The testimony concerned nonverbal conduct of Carnes. The testimony of the witnesses concerning this observed fear exhibited by Carnes is only considered a statement if it is "[n]onverbal conduct, intended by [Carnes] as an assertion."

"Conduct can constitute hearsay under the federal definition if intent to assert accompanied the conduct. In most instances the existence or non-existence of intent to assert will be obvious from the circumstances surrounding the conduct." Robert Lawson, *The Kentucky Evidence Law Handbook,* 8.05 at 371 (3d ed. 1993). Examples of conduct with the intent to assert can be found in *Souder v. Commonwealth,* Ky., 719 S.W.2d 730 (1986), in which a social worker proposed to testify to actions of a child in pointing to and demonstrating on an anatomically correct doll; the actions of the child were clearly assertive and found to constitute hearsay.

We find that the testimony of the witnesses concerning their observations of Carnes' fear of appellant is not hearsay.

■ However, the admissibility of the above evidence must further be examined pursuant to the guidelines outlined in KRE 401 and KRE 403. Relevant evidence, defined in KRE 401, "means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." A decision by the trial court will not be disturbed in the absence of an abuse of discretion. KRE 403 provides as follows: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of undue prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence."

According to Lawson, at 2.10.

The following judgments are required by the equation formulated in KRE 403:

(i) assessment of the probative worth of the evidence whose exclusion is sought; (ii) assessment of the probable impact of specified undesirable consequences likely to flow from its admission (i.e., "undue prejudice, confusion of the issues, or misleading the jury, ... undue delay, or needless presentation of cumulative evidence"); and (iii) a determination of whether the product of the second judgment (harmful effects from admission) exceeds the product of the first judgment (probative worth of evidence.)

*Id.* at 56.

■ As stated above, the Commonwealth did not elicit any statements made by Carnes of her fear of appellant. Nor were the witnesses' observations of fear exhibited by Carnes toward appellant assertions. As a result, the Commonwealth has avoided a determination of the above testimony pursuant to the state-of-mind exception, KRE 803(3).

In other jurisdictions, as well as the federal court system, a common thread appears to exist when interpreting whether hearsay statements about the murder victim's fear of a defendant falls under the state-of-mind exception, KRE 803(3), or whether the hearsay statements are relevant. Where a victim's state of mind is not at issue, the testimony is not allowed to be admitted into evidence. Specifically, where a defendant did not claim self-defense, an accidental death, or suicide, such statements usually have "little relevancy except toward providing a strong inference of appellant's intent, actions or culpability." *Shults v. Nevada,* 96 Nev. 742, 616 P.2d 388, 394 (1980). *See also, United States v. Brown,* 490 F.2d 758 (D.C.Cir.1973) and *Hopkinson v. State,* 632 P.2d 79 (Wyo.1981).

The same effect results in the testimony of four witnesses concerning their observations that Carnes exhibited fear of appellant. The testimony has little relevancy "except toward providing strong inference of appellant's intent, actions or culpability." *Shults,* 616 P.2d at 394. The record establishes that the appellant and decedent recently ended an extra marital relationship. After the relationship ceased the appellant went to extraordinary

measures to be with the decedent. An example is appellant's spending up to four hours of his own time to follow the decedent as she performed duties at work. Also on both Thursday and Friday before her death on Sunday, the appellant requested six to eight times to be rescheduled to work with the victim on Saturday. The appellant's post affair behavior frightened the decedent. Her fear was expressed both in behavior and in speech.

 Applying the relevancy equation outlined in KRE 401, KRE 403, and Lawson, we find that the probative value of the testimony outweighs the prejudicial effect provided by the testimony. In a murder prosecution, evidence that the victim, a normal adult woman, harbored a fear of her accused killer is probative of the central inquiry. It is not unreasonable to ask in such circumstances why she would have such fear and whether it tended to render a disputed fact more or less likely. Prejudice is that which is unnecessary and unreasonable. *Romans v. Commonwealth*, Ky., 547 S.W.2d 128 (1977). As a result, we find the testimony of the four Commonwealth witnesses who testified concerning Carnes' fear of appellant was permissible pursuant to KRE 401 and KRE 403.

 Third, appellant claims that the trial court erred when it failed to allow the introduction by appellant of evidence of other extra-marital affairs by Carnes.

During opening statement, defense counsel stated that he was going to show that the affair between appellant and Carnes was not Carnes' first affair at her place of employment. The Commonwealth objected that this was an improper (and perhaps untimely) attack on Carnes' character. Defense counsel responded that the evidence of other affairs was not being offered to attack Carnes' character, but was to show that other persons had exactly the same motive and opportunity to kill Carnes as the Commonwealth was ascribing to appellant. The trial court sustained the Commonwealth's objection during opening statements.

The Commonwealth argues that appellant accepted the ruling and never offered the witnesses to testify by way of an avowal about the other affairs. As a result, the issue is not preserved for review by this court pursuant to RCr 9.52 and KRE 103(2).

The record indicates that defense counsel in response to the objection stated as follows:

Our purpose is—We are going to call witnesses to show that they had a motive and they had an opportunity for killing this woman for the same reason that the Commonwealth is ascribing to our client that is their interest and their desire to have her that's the only purpose for which we are offering that, we are not offering it for purpose of her reputation, only to show that someone else had been involved with her and would have had a reason for killing her.

In *Hebert v. Commonwealth*, Ky.App., 566 S.W.2d 798 (1978), the Kentucky Court of Appeals interpreted RCr 9.52 literally and concluded that avowals had to be made by witnesses rather than counsel. In *FB Insurance Company v. Jones*, Ky.App., 864 S.W.2d 926 (1993), the Court of Appeals noted that the present state of the law may be unclear concerning avowals. *See also*, Lawson, at 1.10 (KRE 103(a)) "can easily be construed as allowing the use of avowals by counsel to preserve errors for review." *Id.* at 22.

A review of the record discloses that appellant did not request that an examination be conducted outside the presence of the jury and offer the testimony by avowal under RCr 9.52. *Caudill v. Commonwealth*, Ky., 777 S.W.2d 924, 926 (1989). As stated in *Cain v. Commonwealth*, Ky., 554 S.W.2d 369 (1977), "without an avowal to show what a witness would have said an appellate court has no basis for determining whether an error in excluding his proffered testimony was prejudicial." *Id.* at 375. Counsel's version of the evidence is not enough. A reviewing court must have the words of the witness. As a result, we find this issue has not been preserved.

 Fourth, Appellant asserts that a violation of a discovery order by the Commonwealth regarding previously undisclosed statements allegedly made by Appellant upon his arrest violated due process and requires reversal.

The Commonwealth's direct examination of Detective Grant Adams disclosed for the first time that appellant said, "Oh, well" when he was told that her decapitated body had been found. Defense counsel objected and a bench conference was held.

A discovery order had been entered on October 26, 1993, almost a full year before the trial. The statement was disclosed to the defense only when Detective Adams testified at trial. The Commonwealth's Attorney stated there had been no disclosure because he was unaware of the statement. A motion for mistrial was denied. Defense counsel moved for exclusion due to violation of a discovery order. The trial court granted the motion to strike, stating that it was inclined to agree with the defense that what the defendant said at the time of his arrest and shortly thereafter was a crucial point. The jury was then admonished to disregard the last statement, without reference being made to the exact statement to be disregarded. The comment "Oh, well" is subject to many interpretations. We perceive no harm in its admission.

Pursuant to RCr 7.24(1), the defendant may seek disclosure of any oral incriminating statement made by him to any witness, and for the inspection and copying of any relevant written or recorded statements or confessions made by him.

On October 26, 1992, an order was entered by the Circuit Judge directing the Commonwealth to allow defendant to inspect "[t]he substance of any oral incriminating statement made by said defendant to any witness known or by the exercise of due diligence may become known to the attorney for the Commonwealth."

In *Berry v. Commonwealth*, Ky., 782 S.W.2d 625 (1990), we held that "RCr 7.24 applies only to written or recorded statements." *Id.* at 627. Upon examination of RCr 7.24, we find that no substantive changes have been made to the language of the rule that would affect this Court's holding in *Berry*. As a result, we find that no error occurred.

▮ Finally, appellant contends we should review the alleged error of the Com-

monwealth Attorney in closing argument under the palpable error rule. RCr 10.26. A palpable error is one which affects the substantial rights of a party and relief may be granted for palpable errors only upon a determination that a manifest injustice has resulted from the error. This means, upon consideration of the whole case, the reviewing court must conclude that a substantial possibility exists that the result would have been different in order to grant relief. *Jackson v. Commonwealth*, Ky.App., 717 S.W.2d 511 (1986). A careful review of this record discloses no indication that the comment of the Commonwealth Attorney substantially affected the jury's verdict. Accordingly, the error does not rise to the level of palpable error. *Jackson, supra;* RCr 10.26.

▮ Any consideration on appeal of alleged prosecutorial misconduct must center on the overall fairness of the entire trial. *Dean v. Commonwealth*, Ky., 844 S.W.2d 417 (1992); *Slaughter v. Commonwealth*, Ky., 744 S.W.2d 407 (1987); *United States v. Young*, 470 U.S. 1, 105 S.Ct. 1038, 84 L.Ed.2d 1 (1985). In order to justify reversal, the misconduct of the prosecutor must be so serious as to render the entire trial fundamentally unfair. *Summitt v. Bordenkircher*, 608 F.2d 247 (6th Cir.1979). The conduct of the prosecutor in this case was not so prejudicial as to deprive Partin of a fundamentally fair trial. *Dean, supra; Michigan v. Tucker*, 417 U.S. 433, 94 S.Ct. 2357, 41 L.Ed.2d 182 (1974); *McDonald v. Commonwealth*, Ky., 554 S.W.2d 84 (1977).

The conviction is affirmed.

STEPHENS, C.J., and KING, LAMBERT, REYNOLDS and WINTERSHEIMER, JJ., concur.

STUMBO, J., dissents.

Prior to his death on January 27, 1996, Justice REYNOLDS considered the majority opinion herein and concurred. Rendition was delayed only by normal administrative procedures.

STUMBO, Justice, dissenting.

Respectfully, I must dissent.

This was a dreadfully gruesome murder, of that there is no doubt. The gruesomeness of

the crime, however, is not grounds for affirming a conviction obtained through the use of inadmissible evidence and improper argument.

The majority finds, without explaining how it reached such a conclusion, that the evidence of decedent's fear of appellant had more probative value than prejudicial effect. Yet, nowhere is the probative value explained. The decedent's state of mind was not in issue, as there was no claim of self-defense, accidental death, or suicide; thus, there was "little relevancy except toward providing a strong inference of appellant's intent, actions or culpability." *Shults v. Nevada*, 96 Nev. 742, 616 P.2d 388, 394 (1980). The majority treats this inference as a ground for admissibility, when, in fact, *Shults* holds just the reverse. This is particularly true in a case such as this where there is virtually no physical evidence to tie appellant to this crime. No effort is made to distinguish *Shults*, or in any way to set forth what fact is made more probable, or less probable, than it would be without the evidence. KRE 401.

Additionally, I cannot agree that the complained of error in the Commonwealth's closing argument was, at best, harmless error. As the majority opinion notes, appellant sought, unsuccessfully, to introduce evidence that the decedent had engaged in other romantic liaisons. That anticipated testimony was mentioned in appellant's opening argument, but when the time came to introduce this evidence, the trial court refused to allow the testimony. We have affirmed that ruling. During closing argument, the Commonwealth made the following statement: "Other affairs—no evidence on it. While she's dead and buried, its easy to make accusations. If there's proof, bring these people in like they said they would do. They didn't come."

An argument by the Commonwealth referring to testimony to which the trial court has sustained an objection is prejudicial. As this Court stated in *Moore v. Commonwealth*, Ky., 634 S.W.2d 426, 437–38 (1982):

It is a fundamental precept that a prosecutor must conduct himself with "... due regard to the proprieties of his office and to see that the legal rights of the accused, as well as those of the Commonwealth, are protected." (citations omitted) The principles under which the conduct of a prosecuting attorney is judged are well stated in *Niemeyer v. Commonwealth*, Ky., 533 S.W.2d 218, 222 (1976):

One of the finest offices the public can give to a member of the legal profession in this state is that of Commonwealth's Attorney. Its very status becomes a mantle of power and respect to the wearer. Though few are apt to wear it lightly, some forget, or apparently never learn, to wear it humbly. No one except for the judge himself is under a stricter obligation to see that every defendant receives a fair trial, a trial in accordance with the law, which means the law as laid down by the duly constituted authorities, and not as the prosecuting attorney may think it ought to be.

In spite of a ruling of the trial court that evidence of other affairs of the decedent was inadmissible, the prosecutor stated that "[i]f there's proof, bring these people in like they said they would do. They didn't come." The effect of this comment was to insinuate that the defense really did not possess such witnesses. "The decisions of courts, until overruled, must be respected and obeyed by trial counsel." *Moore*, 634 S.W.2d at 438. I would hold that the Commonwealth's comments were improper and prejudicial to the rights of the appellant, and would reverse and remand for a new trial.