# IMPORTANT NOTICE
## NOT TO BE PUBLISHED OPINION

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED."
PURSUANT TO THE RULES OF CIVIL PROCEDURE
PROMULGATED BY THE SUPREME COURT, CR 76.28(4)(C),
THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE
CITED OR USED AS BINDING PRECEDENT IN ANY OTHER
CASE IN ANY COURT OF THIS STATE; HOWEVER,
UNPUBLISHED KENTUCKY APPELLATE DECISIONS,
RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR
CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED
OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE
BEFORE THE COURT. OPINIONS CITED FOR CONSIDERATION
BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED
DECISION IN THE FILED DOCUMENT AND A COPY OF THE
ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE
DOCUMENT TO THE COURT AND ALL PARTIES TO THE
ACTION.

RENDERED: MAY 24, 2007
NOT TO BE PUBLISHED

# Supreme Court of Kentucky

2005-SC-000700-MR

FINAL

DATE 6-14-07 EwA(crouth D.C.

MELDRUM GREG HARVEY                 APPELLANT

V.

APPEAL FROM MUHLENBERG CIRCUIT COURT
HONORABLE DAVID H. JERNIGAN, JUDGE
04-CR-00151

COMMONWEALTH OF KENTUCKY            APPELLEE

## MEMORANDUM OPINION OF THE COURT

## AFFIRMING

A Muhlenberg Circuit Court jury convicted Meldrum Greg Harvey of one count of first-degree rape of M.Y. and one count of first-degree sodomy of M.Y. At the time of the offenses, M.Y. was eight years old. The trial court sentenced Harvey to 40 years in prison. Thus, he appeals to this Court as a matter of right. Ky. Const. § 110(2)(b).

Harvey raises seven issues on appeal. Those issues are as follows: (1) the trial court erred in not directing a verdict of acquittal for both first-degree rape and first-degree sodomy; (2) the trial court erred in admitting testimony and in not granting a mistrial after M.Y.'s father improperly commented on Harvey's right to a jury trial; (3) the trial court erred in allowing M.Y.'s mother to testify that her daughter was terrified during a pediatric exam following the alleged incidents of rape and sodomy; (4) although not preserved, the trial court erred in allowing M.Y.'s mother to vouch for her daughter's credibility and manifest injustice resulted from the error; (5) although not preserved, the

prosecutor improperly vouched for M.Y.'s credibility during the closing argument and manifest injustice resulted from the error; (6) although not preserved, the prosecutor improperly instructed the jury during the closing argument on how they could consider M.Y.'s delay in reporting the rape and sodomy to her parents and manifest injustice resulted from the error; and (7) although not preserved, the prosecutor improperly solicited expert medical opinion evidence that was irrelevant, prejudicial, and did not assist the trier of fact and manifest injustice resulted from the error.

On the issues that were properly preserved for our review, we find no error. And on the issues that were not properly preserved, we find no palpable error. Accordingly, we affirm the judgment of the Muhlenberg Circuit Court.

## I. Facts underlying the charges

In the summer of 2003, M.Y. was eight years old. She has a younger brother. M.Y. and her brother attended school with two of Harvey's children, one of which was in the same class as M.Y. and the other of which was in the same class as M.Y.'s brother. The four children enjoyed playing together.

Harvey occasionally did volunteer work and construction work at the school.

During the summer, Harvey's children asked him and his wife if M.Y. and her brother could come to their house and play while M.Y.'s parents worked. M.Y.'s parents were employed by the school. Her father was both an administrator and a teacher, and her mother was the school secretary. So while school was out for the children in the summer, M.Y.'s parents were still required to work.

M.Y.'s parents agreed to let M.Y. and her brother go to the Harveys' home to play on four or five occasions during the summer of 2003. The children would play video games and swim in the Harveys' inflatable swimming pool.

-2-

On the third visit, Harvey was the only adult present. According to M.Y., at some point in the day, she and Harvey were alone in the pool together because his son who was M.Y.'s age had left the pool to get a ball. She would later allege that Harvey was sitting cross-legged in the pool, and he told her to come over to him. He pulled her down and pulled aside the bottom of her rainbow bathing suit, and then he pulled "his front part" and put "his front bottom inside of" her. Explaining what she meant by "front bottom," M.Y. stated that you use the bathroom with it, and his is "long and soft."

M.Y. further alleged that while they were in the swimming pool together on that third visit, Harvey stuck his finger inside "her bottom." M.Y. told him that it hurt her, and he quit.

Eventually, Harvey's son came back to the pool with a ball, and Harvey got out. When M.Y. decided to stop swimming and change into dry clothes, she went to get the bag of clothes that her mother had packed. It was in the Harveys' master bedroom. At the time she went to get her clothes, Harvey was in the master bathroom on the commode. He was wearing only a yellow tank top. He told his youngest son to leave, and he stayed in the bedroom with M.Y. while she was changing clothes. When she only had her shirt and panties on and was sitting on the bed to pull on her skirt, Harvey pulled her panties apart just he had done in the swimming pool. This time, M.Y. alleges that he licked her "front bottom" with his tongue, and then he asked her if it tickled. She answered that it did not, and then Harvey licked her again.

After licking M.Y., Harvey told her to stay where she was. He left and got a camera. He then took pictures of her "bottom." When asked at trial why M.Y. would comply with Harvey's requests, she replied that her mother had told her to always obey her elders.

M.Y. and her brother returned to the Harveys' home for a fourth visit. Once again, M.Y. alleges that when it came time for her to change her clothes after swimming, Harvey interrupted her, holding a camera, and took more pictures. He then cautioned her not to tell anybody or else he "would have to do something about it."

The summer ended, and school began. M.Y. did not tell anyone what had happened.

Sometime in the fall of 2003, Harvey showed up at the school. While there, M.Y. alleges that he approached her and asked her if she had told their secret, to which M.Y. nodded her head, "No."

In November of 2003, M.Y.'s third-grade teacher was teaching a lesson on good secrets and bad secrets. She gave the children examples of what a good secret would be and what a bad secret would be. She told the children that they needed to tell their parents if they were keeping a bad secret. That night, M.Y. told her mother what Harvey had done to her.

M.Y. did not go to school the next day. However, she did return the following day under the watchful eyes of her parents, who were still trying to decide what to do. Her mother did inform her teacher that someone had done something to M.Y. and asked the teacher to keep an eye on M.Y. Although M.Y.'s mother did not identify Harvey to the teacher, M.Y.'s father had.

About a week after telling her parents, Harvey approached M.Y. in the lunchroom. M.Y., her teacher, and her mother all testified at trial that Harvey leaned over to M.Y., causing M.Y. to become visibly upset. M.Y. testified that Harvey whispered in her ear and asked her if she had told their secret. Harvey did not deny that he approached her that day, but he testified that he tried to give her a high-five as

he always did with children that he knew, but she acted funny, so he walked away to join his son.

After observing M.Y.'s reaction in the lunchroom that day, M.Y.'s parents finally decided to call the police and report what M.Y. had alleged.

On December 23, 2003, which was about five or six months after the alleged rape, Dr. Karen Dougherty, a pediatrician, conducted a physical examination of M.Y., which included a genital examination. The examination was normal, with no sign of trauma.

Additional facts pertaining to the issues will be discussed in the following sections.

## II. Did the trial court err in not directing a verdict of acquittal for both first-degree rape and first-degree sodomy?

Under the evidence as a whole, it was not clearly unreasonable for a jury to find guilt on the charges of first-degree rape and first-degree sodomy. Thus, the trial court did not err in denying Harvey's motion for a directed verdict on both charges.

A. The directed verdict standard of review

On a motion for directed verdict, the trial court must draw all fair and reasonable inferences from the evidence in favor of the Commonwealth, reserving to the jury all questions of credibility and weight of the evidence. See Commonwealth v. Benham, 816 S.W.2d 186, 187 (Ky. 1991); Commonwealth v. Sawhill, 660 S.W.2d 3, 4 (Ky. 1983). "On appellate review, the test of a directed verdict is, if under the evidence as a whole, it would be clearly unreasonable for a jury to find guilt, only then the defendant is entitled to a directed verdict of acquittal." Benham, 816 S.W.2d at 187.

## B. First-degree rape

A conviction for first-degree rape, as it relates to this case, required the jury to find that Harvey engaged in sexual intercourse with M.Y., a person who was incapable of consent because she was less than 12 years old. KRS 510.040(1)(b)2. As defined in KRS 510.010(8), "'[s]exual intercourse' means sexual intercourse in its ordinary sense and includes penetration of the sex organs of one person by a foreign object manipulated by another person. Sexual intercourse occurs upon any penetration, however slight; emission is not required."

Turning to M.Y.'s testimony at trial, she testified that Harvey pulled her down while he was seated in the swimming pool, and then he pulled aside the bottom of her bathing suit. After Harvey pulled her down, he pulled "his front part" and put "his front bottom inside of" her. At the time, his penis was "long and soft." This testimony was sufficient to withstand a directed verdict. And M.Y.'s teacher and her mother corroborated M.Y.'s testimony as to events that took place in school after she told her parents.

Harvey argues that M.Y.'s account of what happened is so incredible on its face as to require its rejection as a matter of law. Harvey lists numerous examples of evidence that he believes is so at variance with natural laws or common human experience as to be patently untrue. Those examples include the following: (1) M.Y. returned to the Harveys' home to play after Harvey allegedly raped and sodomized her. (2) Despite telling law enforcement officers that the penetration was painful and despite telling Harvey that it hurt her when he put his finger in her vagina, M.Y. never complained of discomfort to her parents; and her parents did not notice any physical signs of trauma. (3) The genital examination performed by Dr. Dougherty was totally

- 6 -

normal, yet Harvey's expert, Dr. Janice Ophoven, opined that even a remote in time injury involving vaginal penetration to a prepubertal girl (which M.Y. was) would be discernible during a genital anatomy examination. (4) M.Y.'s testimony did not establish even "slight penetration," an element of first-degree rape. (5) The way in which M.Y. described the rape was physically impossible in that she stated that he placed his flaccid penis inside her as she stood over him. (6) Both Harvey and his wife testified that he could not sit with his legs crossed in front of him (as M.Y. alleged that he sat) due to past injuries to both knees, adding to the reasonable doubt in this case. (7) When M.Y. first met with law enforcement officers for her initial interviews, she did not tell them about Harvey penetrating her with his finger or taking pictures of her. (8) M.Y. did not tell her parents about the incidents until months after they occurred. (9) There were no witnesses, and Harvey maintained his innocence throughout, even choosing to take the witness stand at trial.

We will not address each example raised above other than to reiterate that on appellate review, the test of a directed verdict is, if under the evidence as a whole, it would be clearly unreasonable for a jury to find guilt, only then the defendant is entitled to a directed verdict of acquittal. Considering the evidence as a whole -- not just the evidence favorable to Harvey -- we conclude that it was not clearly unreasonable for a jury to find guilt on the charge of first-degree rape. We believe that Harvey's argument is fundamentally whether M.Y.'s testimony was worthy of belief. But all questions of credibility and weight of the evidence are reserved to the jury, and no corroborating evidence of a child sexual abuse victim's testimony is required to sustain a conviction unless the victim's testimony is "contradictory or incredible, or inherently improbable." Robinson v. Commonwealth, 459 S.W.2d 147, 150 (Ky. 1970). See Sawhill, 660

- 7 -

S.W.2d at 4; Commonwealth v. Cox, 837 S.W.2d 898, 900 (Ky. 1992). There was nothing so contradictory, incredible or inherently improbable about M.Y.'s testimony as to require corroboration.

We find this case indistinguishable from Garrett v. Commonwealth, 48 S.W.3d 6, 10 (Ky. 2001), in which this Court upheld a conviction for first-degree rape on the child victim's testimony that Garrett, an adult male, had sexual intercourse with her when she was eleven years old, that the penetration was "just a little bit," and that it "hurt." The victim in Garrett underwent a complete pediatric examination that was essentially normal and revealed an intact hymen. See id. at 9. In affirming the conviction, this Court noted that, based on the evidence, no corroboration of the child victim's testimony was required. See id. at 10.

C. First-degree sodomy

Although Harvey asserts that he was entitled to a directed verdict of acquittal on the first-degree sodomy charge as well as the first-degree rape charge, he offers no specific arguments in support of his assertion as to the sodomy count. As discussed above, the jury believed M.Y. They believed her when she said that Harvey licked her vagina, asked her if it tickled, and then licked her vagina again. This testimony was sufficient to withstand a directed verdict.

**III. Did the trial court err in admitting testimony and in not granting a mistrial after M.Y.'s father improperly commented on Harvey's right to a jury trial?**

The trial court did not abuse its discretion when it admitted the father's testimony or refused to grant a mistrial.

A. Standard of review for both evidentiary rulings and rulings on motions for mistrial

Whether to admit the father's testimony or grant a mistrial was within the trial

- 8 -

court's discretion. See Partin v. Commonwealth, 918 S.W.2d 219, 222 (Ky. 1996) (admissibility of evidence); Gosser v. Commonwealth, 31 S.W.3d 897, 906 (Ky. 2000) (motions for mistrial). Additionally, as to a mistrial, it "should only be granted where there is a 'manifest necessity for such an action or an urgent or real necessity.'" Gosser, 31 S.W.3d at 906 (quoting Skaggs v. Commonwealth, 694 S.W.2d 672, 678 (Ky. 1985), cert. denied, 476 U.S. 1130, 106 S. Ct. 1998, 90 L. Ed. 2d 678 (1986)).

"The test for abuse of discretion is whether the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles." Goodyear Tire and Rubber Co. v. Thompson, 11 S.W.3d 575, 581 (Ky. 2000).

B. Admissibility of testimony

In his direct examination of M.Y.'s father, the prosecutor asked him why he did not call the police on the night that M.Y. told her mother about the rape and sodomy. He responded as follows:

> I didn't know what to do. I felt if I -- I knew if I called the police, then to some degree, it would be out of our hands is the way I felt. I didn't know what the authorities would do -- what they would be required to do. And I didn't know if my child could be put through a trial, and we'd have to go through it again and again and again, being, I knew there would be a. . .

Counsel for Harvey interrupted and asked to approach the bench. At the bench conference, Harvey's counsel objected to the statement on the basis that M.Y.'s father was saying that the defense was putting him through a trial, but Harvey had a constitutional right to a trial. On that basis, Harvey also made a motion for mistrial.

In response to the objection and the motion for mistrial, the trial court noted that Harvey had put in issue the fact that M.Y.'s parents did not immediately call the police upon their daughter's disclosure. The trial court ruled that it believed M.Y.'s father was

- 9 -

entitled to explain. Accordingly, it overruled the objection and denied the motion for a mistrial.

We find no abuse of discretion in allowing the answer and refusing to grant a mistrial. We agree with the trial court that Harvey had attacked the actions of M.Y.'s parents after M.Y. told them what had happened, even going so far as to suggest that a responsible parent would not continue to put their child in harm's way by not calling the police and continuing to take her to the school where Harvey was a frequent visitor. The prosecutor responded to the attack, and Harvey, having launched the attack, could not then nor cannot now complain. See Harris v. Thompson, 497 S.W.2d 422, 430 (Ky. 1973) ("In short, the appellants, having opened the book on the subject, were not in a position to complain when their adversaries sought to read other verses from the same chapter and page.").

Harvey argues that the trial court did not address the crux of his objection, which was that the witness's answer constituted a penalty imposed on Harvey's exercise of his federal constitutional right to a jury trial. In support, he cites a case out of the Texas appellate court in which the appellate court reversed the sentence on an aggravated sexual assault conviction after it concluded that the prosecutor improperly attempted during the sentencing phase to equate requiring the victim to testify to be tantamount to another rape. See Villarreal v. State, 860 S.W.2d 647, 649 (Tex. App. 1993). Although Harvey compares the witness's response in this case to the prosecutor's argument in Villarreal, we fail to see the comparison. This was a father explaining his thought process, not a prosecutor arguing that the jury should penalize Harvey for maintaining his innocence and exercising his right to a trial.

In a footnote in his brief, Harvey argues that it was palpable error -- because it is

unpreserved -- under RCr 10.26 and KRE 103(e) for the trial court to allow M.Y.'s mother's testimony (which preceded M.Y.'s father's testimony) that they finally decided to call the police after they saw M.Y.'s reaction to Harvey in the lunchroom.

At this point, we will set out the language of RCr 10.26, which applies in the case of unpreserved errors. We will return to this rule as well as KRE 103(e) many times throughout this opinion.

RCr 10.26 is as follows:

> A palpable error which affects the substantial rights of a party may be considered by the court on motion for a new trial or by an appellate court on appeal, even though insufficiently raised or preserved for review, and appropriate relief may be granted upon a determination that manifest injustice has resulted from the error.

And under KRE 103(e), we review unpreserved claims of evidentiary error for palpable error. "A finding of palpable error must involve prejudice more egregious than that occurring in reversible error, and the error must have resulted in 'manifest injustice.'" Ernst v. Commonwealth, 160 S.W.3d 744, 758 (Ky. 2005) (internal citations omitted).

The testimony at issue is the following statement by M.Y.'s mother: "[w]e felt like if we didn't tell, if we didn't try to do something, then he could go to the next girl or the next girl." In so arguing, he admits that his trial counsel did not object to the testimony at trial or move to strike her comments.

In this instance, however, Harvey asked the question. He will not now be heard to complain because he does not like the response. The mother's comments did not affect Harvey's substantial rights.

Having concluded that the trial court did not abuse its discretion in admitting the father's explanation, there is no need for further discussion on the motion for a mistrial.

**IV. Did the trial court err in allowing M.Y.'s mother to testify that her daughter was terrified during a pediatric exam following the alleged incidents of rape and sodomy?**

The trial court did not abuse its discretion in allowing M.Y.'s mother to testify that M.Y. was terrified during the pediatric exam following the rape and sodomy.

As discussed in the previous section, our standard of review on evidentiary rulings is abuse of discretion.

Harvey argued at trial that the fact that M.Y. did not want to be examined by a doctor is not relevant or probative to the issue of rape and sodomy. The trial court ruled that the child's reaction was admissible for whatever both sides would argue as he was sure that the defense would bring out M.Y.'s reaction if she was "calm and cool."

After the trial court ruled that the child's reaction was admissible, the prosecutor asked M.Y.'s mother to tell the jury how M.Y. behaved and reacted during the examination. M.Y.'s mother answered as follows: "Uh, they, of course, just had to examine her. She was terrified because to her it was like it was happening again, and she was not going to lie down. So we had to hold her." Harvey's counsel did not object to this testimony. They defend their failure to object by stating that, aware of the judge's prior ruling, they did not object anew. Nor did they object when Dr. Dougherty also testified that M.Y. was very frightened and tearful during the exam.

In anticipation that this Court would conclude that any alleged errors that occurred after the initial objection are unpreserved, Harvey argues that the trial court's admission of the child's reaction was palpable error under RCr 10.26. We conclude, however, that the trial court did not abuse its discretion in allowing testimony pertaining to M.Y.'s behavior during the pediatric exam. Evidence of a victim's emotional injury is

relevant to prove that he or she was sexually assaulted. See Dickerson v. Commonwealth, 174 S.W.3d 451, 471 (Ky. 2005). As there was no error, there could be no palpable error.

### V. Although not preserved, did the trial court err in allowing M.Y.'s mother to vouch for her daughter's credibility, and did manifest injustice result from the error?

Harvey objected to the mother's alleged vouching, and the trial court sustained the objection. There was no error, and no palpable error.

The standard of review for palpable error is set out above in Section III(B).

The prosecutor's line of questioning and testimony at issue is as follows:

> Q. Now, you said that you had a conversation and Mr. Harvey was at the school after you had been told by [M.Y.] things that had happened at his home.
> A. Yes, sir.
> Q. Did you confront or say anything to Mr. Harvey about these statements at that time?
> A. No, sir. I didn't.
> Q. Why?
> A. Because we had not contacted the police and I was -- we were waiting to see what would be our best thing to do for [M.Y.]. Uh, by him coming in, we could tell that it wasn't something that would, of course, go away. Uh --
> [Prosecutor interrupting]
> Q. Well, at any time after hearing what [M.Y.] told you, did you or your husband doubt these things or not believe what she was saying at any time?
> A. No, I always believed --

At this point, defense counsel objected, and the trial court sustained the objection. Defense counsel did not request any additional action, such as an admonition, and the trial court did not take any additional action.

Realizing that any error, if any, with the mother's testimony was not preserved, Harvey argues that the prosecutor's improper question and mother's bolstering constitutes palpable error. See Derossett v. Commonwealth, 867 S.W.2d 195, 198 (Ky.

- 13 -

1993) ("As the trial court sustained appellant's objections to such questions and admonished the jury without such being requested, and as appellant failed to request any further relief, error was not preserved for appeal.").

Harvey cites more instances of the mother's testimony that he believes constitute either impermissible vouching or inadmissible non-expert opinion evidence. But Harvey's counsel neither objected to nor made a motion to strike the testimony. Having reviewed the entirety of the mother's testimony, we do not agree that the admission of certain responses constituted palpable error.

As discussed previously, a major point of Harvey's defense was that after M.Y. told her mother what had happened, M.Y.'s parents did not immediately call the police, and they never confronted Harvey. They remained cordial and professional with the entire Harvey family during their interactions with them at the school. We view the testimony above as the prosecution's attempt to elicit testimony to explain why the parents proceeded the way that they did.

**VI. Although not preserved, did the prosecutor improperly vouch for M.Y.'s credibility during the closing argument, and did manifest injustice result from the error?**
**&**
**VII. Although not preserved, did the prosecutor improperly instruct the jury during the closing argument on how they could consider M.Y.'s delay in reporting the rape and sodomy to her parents, and did manifest injustice result from the error?**

Having reviewed the trial, including both closing arguments, we conclude that the prosecutor's remarks were within the proper bounds of a closing argument.

We will address these two issues together.

A. Standard of review

Harvey's counsel did not object at any time during the prosecutor's closing

argument.  Thus, our review is pursuant to the palpable error rule.  However, that rule is only implicated should we determine that the conduct of which Harvey now complains was of such an egregious nature as to deny him his constitutional right of due process of law, keeping in mind that the trial court is to allow great leeway to both counsel in closing argument.  See Slaughter v. Commonwealth, 744 S.W.2d 407, 411 (Ky. 1987), cert. denied, 490 U.S. 1113, 109 S. Ct. 3174, 104 L. Ed. 2d 1036 (1989).  The required analysis by this Court "must focus on the overall fairness of the trial, and not the culpability of the prosecutor."  Id. at 411-12.

B.  Vouching

Harvey argues that the following statements constitute improper vouching for the victim's credibility:

> 1.  She [M.Y.] tells, and I'm not gonna argue that she told exactly 100% of everything the first time.  She's a kid.  She told a lot.  She told the truth.
> 2.  Sexual intercourse as defined requires penetration howsoever slight.  Does not require, if you recall, Dr. Op -- the other doctor -- talking about inserting the finger to the knuckle would show that.  That's not what happened here.
> 3.  . . . you remember what you heard, and I ask that you return a verdict based upon the evidence that you heard using your common sense that would result in a conviction of first-degree rape and a conviction of first-degree sodomy because, ladies and gentlemen, that's exactly what he did to [M.Y.] in June, July, 2003.  Thank you.

Reviewed in the context of the entire closing argument, we conclude that there is nothing improper about these arguments.  A closing argument is "just that - *an argument*.  A prosecutor may comment on tactics, may comment on evidence, and may comment as to the falsity of a defense position."  Slaughter, 744 S.W.2d at 412 (emphasis in original).

- 15 -

C. Improper instruction

Harvey argues that the following statements constitute improper comments because the prosecutor is not permitted to instruct the jury on how they may weigh or use certain evidence:

> 1. She was eight years of age. The common sense thing -- if anybody here says, "Hey, we know that when you molest kids, they always tell right then." I dare anybody to think or say that out loud when you go back there, because I submit to you, that just isn't the way it is. Sounds good. It's not the way it is. Sometimes, yeah. Sometimes, no. And I think each and every one of you know that.
> 2. The fact they waited a week before calling the police, I submit to you, cannot be used or thought of by you as to say it didn't happen. That to me shows these are people that are trying to do anything and everything they could for their daughter, who by all accounts, by all witnesses, is a well-behaved child.

Reviewed in the context of the entire closing argument, we conclude that there is nothing improper about these arguments. The delay in reporting had been a prominent issue in the trial, the defense arguing that M.Y. could not be believed because she would have never gone back to the Harvey home for a fourth visit after the rape and sodomy occurred on the third visit. The prosecution, in response, presented its argument on the delay, all the while referring to the law of the case as instructed by the court and all the while telling the jury to rely on their common sense and recollection of the testimony in their search for the truth.

There was no error. Thus, there could be no palpable error.

**VIII. Although not preserved, did the prosecutor improperly solicit expert medical opinion evidence that was irrelevant, prejudicial, and did not assist the trier of fact, and did manifest injustice result from the error?**

There was no error, palpable or otherwise, in allowing Dr. Dougherty to testify that her finding of a normal genital exam was consistent with the reported history of sexual assault.

- 16 -

In instances in which evidentiary errors are preserved, the standard of review, as discussed in section III(A) above, is abuse of discretion. However, we review unpreserved claims of evidentiary error for palpable error. KRE 103(e). This is an unpreserved claim of evidentiary error.

Dr. Dougherty's finding was relevant. She conducted the medical examination following the rape. Her opinion concerned a subject peculiarly within the knowledge of a trained physician and was likely to assist the jury in determining whether M.Y. had been sexually assaulted by Harvey. See Stringer v. Commonwealth, 956 S.W.2d 883, 892 (Ky. 1997). Harvey's counsel cross-examined Dr. Dougherty and made the point that her finding was also consistent with no sexual abuse having taken place. There was no error in the admission of this testimony.

We affirm the judgment of the Muhlenberg Circuit Court.

All sitting. All concur.

ATTORNEY FOR APPELLANT

J. Vincent Aprile II
Lynch, Cox, Gilman & Mahan, P.S.C.
500 W. Jefferson Street
Suite 2100
Louisville, Kentucky 40202

ATTORNEY FOR APPELLEE

Gregory D. Stumbo
Attorney General of Kentucky
Room 118, Capitol Building
Frankfort, Kentucky 40601

James C. Shackelford
Assistant Attorney General
Office of the Attorney General
1024 Capital Center Drive
Frankfort, Kentucky 40601