# IMPORTANT NOTICE
## NOT TO BE PUBLISHED OPINION

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED." PURSUANT TO THE RULES OF CIVIL PROCEDURE PROMULGATED BY THE SUPREME COURT, RAP 40(D), THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE CITED OR USED AS BINDING PRECEDENT IN ANY OTHER CASE IN ANY COURT OF THIS STATE; HOWEVER, UNPUBLISHED KENTUCKY APPELLATE DECISIONS, RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE BEFORE THE COURT. OPINIONS CITED FOR CONSIDERATION BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED DECISION IN THE FILED DOCUMENT AND A COPY OF THE ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE DOCUMENT TO THE COURT AND ALL PARTIES TO THE ACTION.

RENDERED: MARCH 20, 2025
NOT TO BE PUBLISHED

# Supreme Court of Kentucky

2024-SC-0183-MR

MARQUESS SMITH                                          APPELLANT

                        ON APPEAL FROM FAYETTE CIRCUIT COURT
V.                   HONORABLE LUCY ANNE VANMETER, JUDGE
                             NO. 16-CR-00340-003

COMMONWEALTH OF KENTUCKY                        APPELLEE

**MEMORANDUM OPINION OF THE COURT**

**<u>AFFIRMING</u>**

In January 2016, five individuals – Christopher "Mason" Allen, Ricky Auxier, Kenyon Hipps, Marique Sturgis, and Marquess Smith—committed a robbery on University Drive in Lexington, Kentucky. During the robbery, 18-year-old Caleb Hallett was shot and killed. Caleb's friend, Josh Baker, was shot in the wrist and survived. Shortly after the robbery and murder, Hipps died by suicide in Ohio after a vehicle he was riding in was stopped by police. Prior to Smith's trial, the Commonwealth filed a motion in limine seeking to prevent Smith from introducing evidence that Hipps's death was a result of guilt from the robbery and murder. The Fayette Circuit Court granted the motion, in part, and held that "[n]o party, witness, and/or attorney . . . will be allowed to submit or offer any testimony that the suicide was a result of or

connected in any way, shape or form to the robbery and shooting of Hallett and Baker on January 9, 2016." The trial court allowed the parties to present the fact that Hipps died by suicide in Ohio during a police encounter ten days after the robbery and murder to be presented to the jury.

Smith's sole argument on appeal is that the trial court erred by granting the motion in limine regarding the connection between the suicide and the robbery, thereby precluding his ability to argue that Hipps was an alternate perpetrator that shot and killed Hallett. After review, we affirm the trial court.

### FACTS AND PROCEDURAL HISTORY

Late in the evening on January 8, 2016, Josh Baker was in Lexington, Kentucky on military leave. Baker was visiting family because he would soon be deployed to Iraq. Caleb Hallet, Josh's friend, came to Josh's mother's house around 10:00 p.m. Around 11:30 p.m., Caleb drove Josh to a friend's house on University Avenue so they could socialize with friends before Josh's deployment. Around 1:00 a.m. on January 9, Josh felt ill, so Josh and Caleb went to the car. Upon leaving, Josh opened the passenger side door of the vehicle and vomited on the ground. While Josh had the door open, a man appeared next to Josh with a gun. The man, who was later determined to be Marique Sturgis, was wearing a hoodie and had a bandana covering his face. Sturgis rummaged through Josh's pockets and took his iPhone.

At the same time, Josh heard Caleb on the driver's side of the vehicle arguing with another individual. Josh then heard two gunshots from Caleb's side of the car before Sturgis shot Josh in the wrist. After the masked

2

individuals ran away, Josh went to the front of the car and found Caleb unresponsive.

Christopher "Mason" Allen and Ricky Auxier testified for the Commonwealth and explained the events leading up to Caleb's murder. Allen visited his friend, Patrick Rogers, and through Rogers met Marquess Smith. Allen told Rogers about his lack of money or a job, and that he hoped to make money by committing a robbery. Allen and Smith exchanged phone numbers and made plans to rob a house on University Avenue, which they believed contained drugs and money. The Commonwealth introduced the text messages exchanged by Allen and Smith which detailed the logistics of the robbery. At some point, Rogers appeared to drop out of the plans to commit a robbery. Smith and Allen contacted several people searching for a getaway car and driver for the robbery. Allen's friend, Ricky Auxier, later agreed to be the driver in exchange for a portion of the proceeds.

On January 8, 2016, Allen and Auxier drove to Smith's house and met Marique Sturgiss and Kenyon Hipps, who called himself "Pudge." Auxier drove Allen, Smith, and Hipps to University Avenue to scope out the target house a little after midnight on January 9. After Allen identified the house, he and Auxier got cold feet and did not want to go through with the robbery. Smith wanted an additional person to help with the robbery, so they drove back to Smith's house to pick up Sturgis.

After picking up Sturgis, the five returned to University Avenue and Allen pointed out what he thought was the target house. Hipps, Sturgis, and Smith

3

walked toward the target house while Allen and Auxier stayed in the vehicle. A short time later, Auxier and Allen heard gunshots and saw Hipps, Sturgis, and Smith running back to the car.[1] They saw the trio taking off their masks and tucking something into their waistbands, which Auxier and Allen believed to be guns. During the getaway, Smith and Sturgis recounted what happened. Allen recounted that Smith told Sturgis that he shot a person, and Sturgis allegedly responded that since Smith fired his gun, he also shot at the car. Sturgis also stated he got a phone during the robbery. Hipps did not speak after he returned to the vehicle.

Allen also testified about his interactions with police. In his first interview, he implicated Smith, Sturgis, and Hipps. While in the bathroom at the police station, Allen called Auxier to tell him what to say to police to ensure their stories matched. Allen spoke with police a second time on January 10 and continued to cover up the breadth of his involvement. In a third interview, Allen gave a bit more information but still did not describe his full involvement in planning the robbery. Allen was able to identify Smith, Sturgis and Hipps in lineups.

Auxier's testimony corroborated much of Allen's testimony. Auxier told police that Allen "set the whole thing up," claimed it was for a drug deal, and never mentioned the robbery. Additionally, Auxier recalled that Allen called him and told him to stick with a "certain story" with the police. In his third

---

[1] According to trial testimony, Smith, Sturgis, and Hipps encountered Hallett and Baker before reaching the house they intended to rob.

4

interview with police, Auxier admitted it was a robbery and that he assisted to get a cut of the proceeds. He identified Smith, Sturgis and Hipps in lineups.

Detective Bill Brislin was assigned to the case and he interviewed Allen and Auxier several times. Initially, Allen and Auxier tried to mislead the police but eventually conceded to the facts as outlined above.

Meanwhile, the other suspects were on the run. Ten days after the murder, Hipps was in Dayton, Ohio in the backseat of a vehicle that was pulled over by police. While the officers were dealing with the other passengers, Hipps pulled out a handgun and died by suicide. Forensic examination determined that Hipps's gun was inconsistent with the bullets found at the murder scene. Smith and Sturgis were located by police approximately two months later.

Smith and Sturgis rejected plea offers and proceeded to trial in November 2023.[2] Allen and Auxier entered plea agreements and testified at Smith and Sturgis's trial for the Commonwealth. Before trial, the Commonwealth filed a motion in limine to "prohibit the Defendants from stating, directly or impliedly, that the reason for Hipps' suicide is based on his actions the night of January 9." After conducting a hearing, the trial court prohibited any party, witness, or attorney from offering any testimony that Hipps's suicide was the result of or connected in any way to the robbery and shooting of Caleb and Josh. The trial court allowed the jury to learn that Hipps shot himself in Ohio ten days after the robbery and murder.

---

[2] It took a long time for this case to come to trial. The Commonwealth offered several reasons for the delays, including changes in attorneys for the defendants, the COVID pandemic, and reassignment of the case to a different judge due to a conflict.

During trial, Smith's counsel attacked the credibility of the witnesses and argued that Auxier and Allen were the real perpetrators. The Commonwealth also told the jury about Hipps's suicide during its opening argument and elicited testimony from Detective Brislin that Hipps died by suicide in Ohio shortly after the robbery and murder.

The jury found Smith guilty of murder (principal or complicitor), complicity to second-degree assault, and two counts of complicity to first-degree robbery. The jury recommended thirty years for the murder, ten years for the complicity to second-degree assault, and ten years for each count of complicity to first-degree robbery, with some to run concurrently and some to run consecutively, for a total sentence of forty years. The trial court followed the jury's recommendation. Smith now appeals to this Court as a matter of right.

## ANALYSIS

Smith's sole argument on appeal is that the trial court erred by granting the Commonwealth's motion in limine. More particularly, Smith contends this ruling precluded his ability to present an alternate perpetrator defense and assert that Hipps was the shooter.

Generally, a trial court has wide discretion in admitting evidence. *Daugherty v. Commonwealth,* 467 S.W.3d 222, 231 (Ky. 2015). This Court will not reverse a trial court's admission of evidence absent an abuse of discretion. *Partin v. Commonwealth,* 918 S.W.2d 219, 222 (Ky. 1996), *overruled on other grounds by Chestnut v. Commonwealth,* 250 S.W.3d 288 (Ky. 2008). The crux

6

of Smith's argument is that the trial court improperly precluded him from *arguing* that Hipps's death was connected to the robbery and murder, rather than preventing Smith from *presenting evidence* that Hipps's death was connected to the robbery and murder. In any event, the trial court's written ruling allowed evidence that Hipps shot himself shortly after the robbery, though it also barred direct argument by counsel that Hipps's suicide was the result of or connected to that robbery. We therefore review for an abuse of discretion. A trial court abuses its discretion when its decision is "arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky. 1999).

Prior to trial, the Commonwealth filed a motion in limine to preclude any argument that Hipps's suicide was related to his participation in the events of this case. During police interviews, Hipps was named as a participant in the activities that led to these criminal charges. Prior to Hipps being arrested and interviewed, however, he died by suicide. On January 19, 2016, Hipps was in Dayton, Ohio and was a backseat passenger in a vehicle that was pulled over by police. While officers were dealing with the other passengers in the car, they heard a gunshot. Police discovered Hipps suffering from a self-inflicted gunshot wound to the head.

Police collected the gun and Detective Brislin had it tested by the Kentucky State Police Crime Laboratory to determine if any of the shell casings were discharged from the firearm used during the murder and robbery in Lexington. In its motion, the Commonwealth explained its intent to present

7

testimony that Hipps was a participant and that a gun found in his possession was collected and tested. The Commonwealth anticipated that, in response, Smith would seek to present information that Hipps shot himself and did so because of guilt for his actions on January 9, 2016, in an effort to establish that Hipps, not Smith, was the shooter. However, the Commonwealth argued that there was no proof of such a proposition and in fact, the Commonwealth provided information in discovery that Hipps was depressed and suicidal prior to the events on January 9.

In response, Smith stated that the motion should be denied because the Commonwealth merely sought to unduly limit his ability to argue. Smith also stated that it was reasonable to infer that Hipps's guilt for taking the life of another caused him to take his own life. But there was no additional testimony or evidence that supported Smith's position that Hipps died by suicide because he was the shooter and felt guilty. Defense counsel stated she filed at least four motions requesting a subpoena for the Ohio officer who conducted the traffic stop to compel his testimony at Smith's trial. But the Commonwealth asserts that Hipps gave no statement, nor did he indicate the reason for taking his own life, and thus there was simply no proof that Hipps's death was connected in any way to the robbery and murder.

After the hearing, the trial court concluded that the parties could advise the jury that Hipps died by suicide and the circumstances surrounding that incident. However, no party was permitted to submit evidence that the suicide

8

was connected in any way to the robbery and shooting of Caleb and Josh on January 9, 2016. In its ruling from the bench, the trial court stated:

> I'm not going to allow us to go into "it's because of this incident" or any inference that it's because of this incident because I just don't see any…any evidence or proof whatsoever other than pure speculation that this incident is the reason he committed suicide. And I'm just not going to allow that leap to be made.

The trial court explained that it contemplated only allowing the parties to state that Hipps died but reasoned that the jury was entitled to know that it was death by suicide ten days after the robbery and murder and that it occurred while Hipps was in Ohio.

In its written order, the trial court explained there was no evidence or proof of facts that the suicide was a result of the robbery and shooting, rendering it speculative and irrelevant. The order states:

> The Court will allow the parties to advise the jury that Kenyon Hipps committed suicide in the back seat of a vehicle that was stopped by police in Dayton, Ohio ten (10) days after the January 9, 2016 robbery and shooting of Caleb Hallett and Josh Baker. No party, witness, and/or attorney, however, will be allowed to submit or offer any testimony that the suicide was the result of or connected in any way, shape or form to the robbery and shooting of Hallett and Baker on January 9, 2016.

The trial court further reasoned that "[t]he probative value of such speculative evidence/testimony is substantially outweighed by unfair prejudice and confusion of the issues."[3]

---

[3] The trial court engaged in analysis of relevance, probativeness, and prejudice under our Rules of Evidence in its written order. However, because there was no evidence being offered, and instead only argument/speculation, the issue was more properly the exercise of the court's discretion to control speculative evidence and argument rather than an application of KRE 401, 402, and 403.

9

As a result of the trial court's pretrial ruling on the motion in limine, Smith asserts that he could not argue that Hipps killed himself out of guilt for killing Caleb and that, as a result, he did not mention Hipps as an alternate perpetrator during his closing argument.[4] The trial court excluded testimony that Hipps's death was related in any way to the robbery and murder. Smith acknowledges that there was no evidence connecting Hipps's death to the robbery and murder, and in fact notes that "the strongest evidence that Hipps was the actual shooter was the inference that he felt guilty and shot himself because he was the actual killer." The parties and the jury can draw reasonable inferences from the evidence, but the issue here is that there was no evidence. Smith did not offer any proof that Hipps shot himself out of guilt, and in fact, the Commonwealth offered contrary proof to the trial court. There was no proof that Hipps was the actual shooter, no proof why Hipps was in Ohio, no proof of what happened right before he died, and no indication of what prompted his decision to end his life – it is mere speculation.[5]

---

[4] The parties debate whether the trial court's ruling prohibited only the introduction of testimony that Hipps's suicide was connected to the robbery and murder, or whether the order prohibited both testimony and any argument that the two incidents were connected. In reviewing the oral ruling by the trial court during the hearing on the Commonwealth's motion in limine, and reading the trial court's written order, either interpretation is reasonable.

[5] Generally, Kentucky law permits a witness to give opinion testimony regarding "a person's apparent mental or emotional state." *Carson v. Commonwealth*, 621 S.W.3d 443, 446-47 (Ky. 2021) citing *Commonwealth v. Sego*, 872 S.W.2d 441, 444 (Ky. 1994). But a conclusion based on a person's behavior must be from "their personal observation of certain facts." *Carson*, 621 S.W.3d at 447. Put differently, any conclusions provided during the testimony of a lay witness must be "fact-based and derived from . . . personal observations . . . ." *James v. Commonwealth*, 681 S.W.3d 60 (Ky. 2023).

In making arguments, counsel is permitted to draw reasonable inferences from the evidence. *Peacher v. Commonwealth,* 391 S.W.3d 821, 850 (Ky. 2013). "[A]s long as an inference is grounded in common sense and experience, in reason and logic, and in the evidence at trial, it should be allowed and, indeed, embraced." *Southworth v. Commonwealth,* 435 S.W.3d 32, 46 (Ky. 2014). Smith argues that, based on his interpretation of the trial court's oral ruling and written order, he did not believe he was free to reference Hipps's death by suicide and the inference that it was connected to the robbery and murder.

As quoted above, the trial court order explicitly prohibited testimony that the suicide was related in any way to the robbery and murder. In its oral ruling from the bench, the trial court centered its ruling on the fact that there was no evidence or proof that the two incidents were in any way related. The Commonwealth's motion in limine specifically sought to exclude testimony and prevent the defendants from expressly or impliedly stating that the two incidents were related. The trial court granted the motion.

However, it is well settled that parties are given wide latitude in closing arguments. *Miller v. Commonwealth,* 283 S.W.3d 690, 704 (Ky. 2009). At the very least, defense counsel could have re-emphasized the circumstances surrounding Hipps's death – that it was close in time to the robbery and murder, that it was while he was in Ohio, and that it occurred shortly after the police apprehended a vehicle he was riding in. The jury would have been free to draw any reasonable inferences from that information—information that was

11

presented to them multiple times throughout the case. Defense counsel argued that Allen and Auxier were alternate perpetrators in closing argument, and likewise could have introduced the circumstances surrounding Hipps's death in the same vein.

An inference is not evidence. According to Black's Law Dictionary, an inference is a "conclusion reached by considering other facts and deducing a logical consequence from them."[6] As Smith acknowledges, the inference that Hipps's death was related to the robbery and murder was the strongest "evidence" that Hipps was in fact an alternate perpetrator. The trial court did not prohibit Smith from presenting evidence that Hipps was an alternate perpetrator. As Smith argues, Hipps had the same motive as the other participants in the crime, and the same opportunity because he left the car with Smith and Sturgis and was armed with a gun. If there was other evidence indicating that Hipps was the shooter, defense counsel was free to go through the ordinary channels to present that information in its case.

But Smith could not and did not present any proof to the trial court that the two incidents were connected. There were no statements from the other individuals or officers present at the scene of the suicide, or any indication that anyone knew the true and immediate circumstances surrounding Hipps's death. In sum, the idea that Hipps's death was connected to the robbery and murder is purely speculative and supported by no evidence. As such, the trial court's decision to exclude testimony about Hipps's death was not "arbitrary,

---

[6] INFERENCE, Black's Law Dictionary (12th ed. 2024).

12

unreasonable, unfair, or unsupported by sound legal principles." *English*, 993

S.W.2d at 945.

## **CONCLUSION**

For the foregoing reasons, we affirm the judgment and sentence of the

Fayette Circuit Court.

All sitting.  All concur.


COUNSEL FOR APPELLANT:

Aaron Reed Baker
Assistant Public Advocate


COUNSEL FOR APPELLEE:

Russell M. Coleman
Attorney General of Kentucky

Sarah Benedict
Assistant Attorney General