IN THE SUPREME COURT OF THE STATE OF NEVADA

DUSTIN COOPER,
Appellant,
vs.
THE STATE OF NEVADA,
Respondent.

No. 76782



FILED

DEC 19 2019

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY S. Young
DEPUTY CLERK

*ORDER OF AFFIRMANCE*

This is an appeal from a judgment of conviction, pursuant to a jury verdict, of first-degree murder with the use of a deadly weapon. Third Judicial District Court, Lyon County; John Schlegelmilch, Judge.

Johnnie Shadden suffered a fatal gunshot wound outside her home. Her husband, appellant Dustin Cooper, was the only other person present. He called 911, and when police arrived, he explained that a rifle he had placed atop a table on the front porch had somehow fallen and discharged, shooting Shadden in the back.

After Cooper's reenactment of the incident, reconstruction of the scene tracing the bullet's trajectory, extensive and unsuccessful testing of the rifle for accidental discharge, and an interview with a friend who claimed that Shadden had told him that Cooper once pointed a gun at her, the State charged Cooper with first-degree murder with the use of a deadly weapon.

At trial, the State offered testimony from Shadden's friend; the coroner who determined that Shadden's death was not an accident but a homicide; law enforcement officers who responded to the 911 call and testified that Cooper's demeanor was oddly casual under the circumstances, and others who testified that his explanation of the rifle's accidental

discharge seemed implausible or nonsensical; firearms experts who tested the rifle and testified that they could not induce any such discharge or malfunction; and medical experts who confirmed the State's theory of the bullet's trajectory through Shadden's body, which suggested that the gunshot was not an accidental discharge.

The jury found Cooper guilty and the district court sentenced him to life with the possibility of parole after 20 years.

Cooper now appeals, arguing that the district court abused its discretion or erred by admitting hearsay testimony; admitting expert testimony about Shadden's manner of death; admitting testimony describing Shadden's death as murder; admitting testimony describing Cooper's demeanor; "interjecting" during cross-examination; and denying his motion for mistrial. He also argues that cumulative error warrants reversal.

*The district court did not abuse its discretion by admitting testimony under the state-of-mind hearsay exception*

The district court admitted testimony from Shadden's friend that Shadden told him that Cooper once threatened her with a gun. The friend also testified that Shadden was scared when she told him of the incident. Cooper argues that the district court abused its discretion by admitting the testimony under the state-of-mind exception to the hearsay rule. He argues that a statement of the declarant's state of mind must be explicit, and not merely inferential. He also argues that the district court abused its discretion because its limiting instructions were ineffective, and that the jury was incapable of following them by considering the testimony only as proof of Shadden's fear, and not also as proof that Cooper threatened her with a gun.



*The state-of-mind exception applies*

"A statement of the declarant's then existing state of mind, emotion, sensation or physical condition, such as intent, plan, motive, design, mental feeling, pain and bodily health, is not inadmissible under the hearsay rule." NRS 51.105(1). "The decision to admit or exclude such evidence is within the sound discretion of the district court and the district court's determination will not be disturbed unless manifestly wrong." *Tabish v. State*, 119 Nev. 293, 310, 72 P.3d 584, 595 (2003).

The State offered the statement not to prove that Cooper pointed a gun at Shadden, but to prove Shadden's state of mind after Cooper threatened her with a gun: fear of Cooper. The statement expressed, although not explicitly, the fear attendant to being threatened with a gun, and was relevant to rebut Cooper's accidental-discharge explanation and his claim that their marriage was not acrimonious. We therefore conclude that the district court did not abuse its discretion by admitting the testimony as a statement of Shadden's state of mind.

*The district court's limiting instructions were effective*

"In order for the state of mind exception to be applicable, . . . a proper limiting instruction must be given or objectionable testimony deleted." *Shults v. State*, 96 Nev. 742, 751, 616 P.2d 388, 394 (1980). "[T]he trial court should give the jury a specific instruction explaining the purposes for which the evidence is admitted immediately prior to its admission and . . . a general instruction at the end of trial reminding the jurors that certain evidence may be used only for limited purposes." *Tavares v. State*, 117 Nev. 725, 733, 30 P.3d 1128, 1133 (2001). This court "presume[s] that the jury followed the district court's orders and instructions." *Allred v. State*, 120 Nev. 410, 415, 92 P.3d 1246, 1250 (2004).

The district court gave the jury a limiting instruction before admitting the testimony, another afterward, and yet another at the trial's end. We therefore conclude that the district court did not abuse its discretion by admitting the testimony, and we presume that the jury followed the district court's instructions. Cooper's argument—that an inferential statement of the declarant's state of mind may challenge the jury's ability to consider the statement only as proof of the declarant's state of mind—is well taken, but the district court provides limiting instructions to address that very concern, and he offers no proof to overcome our presumption that the jury followed the instructions here.

*The district court did not abuse its discretion by admitting the deputy coroner's manner-of-death testimony*

Cooper argues that the district court erred by admitting the deputy coroner's testimony about Shadden's manner of death (homicide). He argues that the testimony did not assist the jury and lacked a scientific basis, never citing but possibly alluding to the requirements for expert testimony that we provided in *Hallmark v. Eldridge*, 124 Nev. 492, 498, 189 P.3d 646, 650 (2008).[1]

We review a district court's admission of expert testimony for abuse of discretion. *Perez v. State*, 129 Nev. 850, 856, 313 P.3d 862, 866

---

[1]Cooper fails to cite relevant supporting authority, or any authority at all, for many of his arguments. He also omits the standard of review for this issue and several others throughout his opening brief. We therefore remind Cooper's counsel that NRAP 28 requires an appellant to provide the standard of review and citation to supporting authority for each argument. *See* NRAP 28(a)(10)(A) (requiring citation to "the authorities . . . on which the appellant relies"); NRAP 28(a)(10)(B) (requiring "a concise statement of the applicable standard of review").

(2013). Expert testimony may be admissible if it satisfies three requirements:

> (1) [the expert] must be qualified in an area of "scientific, technical or other specialized knowledge" (the qualification requirement); (2) his or her specialized knowledge must "assist the trier of fact to understand the evidence or to determine a fact in issue" (the assistance requirement); and (3) his or her testimony must be limited "to matters within the scope of [his or her specialized] knowledge" (the limited scope requirement).

*Hallmark*, 124 Nev. at 498, 189 P.3d at 650 (second alteration in original) (quoting NRS 50.275). "In *Hallmark*, we outlined some factors that are useful in this inquiry, but repeatedly noted that the factors enumerated 'may not be equally applicable in every case.'" *Higgs v. State*, 126 Nev. 1, 18, 222 P.3d 648, 659 (2010) (quoting *Hallmark*, 124 Nev. at 499, 189 P.3d at 651). District courts thus have "wide discretion to perform their gatekeeping duties" when deciding whether to admit expert testimony. *Id.* A district court does not abuse its discretion when substantial evidence supports its determinations under the *Hallmark* factors. *See Hallmark*, 124 Nev. at 499, 189 P.3d at 651 (holding that because substantial evidence supported the district court's findings, the district court did not abuse its discretion in determining that an expert witness was qualified to testify). "Substantial evidence is that which a reasonable mind might consider adequate to support a conclusion." *Steese v. State*, 114 Nev. 479, 488, 960 P.2d 321, 327 (1998).

Because Cooper challenges, at most, only two of the three *Hallmark* requirements, we limit our analysis accordingly, and we conclude that the district court did not abuse its discretion under either requirement.

*Qualification*

"In determining whether a person is properly qualified, a district court should consider the following factors: (1) formal schooling and academic degrees, (2) licensure, (3) employment experience, and (4) practical experience and specialized training." *Hallmark*, 124 Nev. at 499, 189 P.3d at 650-51 (footnotes omitted). "[T]hese factors are not exhaustive, may be accorded varying weights, and may not be equally applicable in every case." *Id.* at 499, 189 P.3d at 651.

The district court found that the coroner "[c]learly . . . established" his qualification. It cited his "specialized knowledge and experience to act as a Deputy Coroner," and noted that "[h]e ha[d] done over 136 death investigations, had specialized training in the area both with the Clark County Coroner's Office as well as death investigations, and has continued [to do] that." We conclude that those credentials constitute substantial evidence of the coroner's qualification, and thus that the district court did not abuse its discretion by finding that the coroner was qualified.

*Assistance*

"An expert's testimony will assist the trier of fact only when it is relevant and the product of reliable methodology." *Hallmark*, 124 Nev. at 500, 189 P.3d at 651 (footnote omitted). Cooper does not challenge the testimony's relevance, so the only issue for this court is whether the district court abused its discretion by finding that the testimony was reliable. When assessing reliability,

> a district court should consider whether the opinion is (1) within a recognized field of expertise; (2) testable and has been tested; (3) published and subjected to peer review; (4) generally accepted in

the scientific community . . . ; and (5) based more on particularized facts rather than assumption, conjecture, or generalization.

*Id.* at 500-01, 189 P.3d at 651-52 (footnotes omitted). Although some expert testimony may "not meet all the *Hallmark* factors for assessing reliability, those factors may be afforded varying weights and may not apply equally in every case. It is up to the district court judge to make the determination regarding the varying factors as . . . the gatekeeper—not this court." *Higgs*, 126 Nev. at 20, 222 P.3d at 660.

The district court found that the testimony assisted the jury in understanding the evidence and determining a fact in issue: whether Shadden's death was accidental. It found that the coroner determined,

> based on his experience[,] that it was, in fact, a homicide and he set forth the reasons why he felt that it was based on the standards made at the scene, . . . the trajectory of the bullet, . . . his review of the [medical examiner] reports, . . . discussions with the detectives and other people on the scene, . . . [and] his on-scene investigation . . . .

Although few of the reliability factors apply here and the district court addressed none of them explicitly, it cited the coroner's extensive experience, first-hand investigation, and use of expert materials. Those findings are sufficiently responsive to the factors to constitute substantial evidence of reliability. *See Higgs*, 126 Nev. at 18, 222 P.3d at 659 ("The [*Hallmark*] requirements ensure reliability . . . while not imposing upon a judge a mandate to determine scientific falsifiability and error rate for each case."). We therefore conclude that the district court did not abuse its discretion by determining that the testimony was reliable and ultimately admitting the testimony.

*The district court did not abuse its discretion by admitting testimony about Cooper's demeanor*

Cooper argues that the district court erred by admitting testimony about his demeanor and how it compared to that of other relatives of homicide victims.

This court reviews a district court's admission of evidence for abuse of discretion. *Mclellan v. State*, 124 Nev. 263, 267, 182 P.3d 106, 109 (2008). "The conduct of a person and other circumstances are factors which may be detailed to the jury so as to equip them with the necessary inferences [about that person's state of mind]." *Dawson v. State*, 84 Nev. 260, 261, 439 P.2d 472, 473 (1968). A lay witness's testimony must be "[r]ationally based on the perception of the witness; and . . . [h]elpful to a clear understanding of the testimony of the witness or the determination of a fact in issue." NRS 50.265.

The witnesses who testified about Cooper's demeanor did so as lay witnesses. They rationally based their testimony on their perceptions of Cooper's demeanor in their personal interactions with him shortly after Shadden's death. Their testimony was helpful in understanding Cooper's blithe demeanor, which was a fact in issue because the State sought to establish that he did not appear to be grieving his wife's purportedly accidental death. We therefore conclude that the district court did not abuse its discretion by admitting the testimony.

*The district court did not abuse its discretion by admitting testimony describing Shadden's death as murder*

Cooper argues that the district court erred by admitting a detective's testimony describing Shadden's death as murder, which he argues was an impermissible opinion. The district court overruled his objection to the testimony and explained that it was a permissible opinion.

When Cooper later renewed his objection, the court again explained that the testimony was admissible. Nonetheless, the court struck the testimony and instructed the jury to disregard it "even though the court [did] not feel that . . . it was improper." Cooper now argues that the instruction did not cure the harm done by the court's expression of its "approval" of the testimony.

This court reviews a district court's admission of evidence for abuse of discretion. *Mclellan*, 124 Nev. at 267, 182 P.3d at 109. "A witness may not give a direct opinion on the defendant's guilt or innocence in a criminal case." *Collins v. State*, 133 Nev. 717, 724, 405 P.3d 657, 664 (2017). A witness may, however, "give testimony from which an inference of guilt—even, an inference that the witness is of the opinion the defendant is guilty—may be drawn." *Id.* at 725, 405 P.3d at 664-65.

The detective did not give a direct opinion of Cooper's guilt. This court has described such an opinion as "directly declaring to the jury that 'in [his] opinion, the defendant was guilty of the crime.'" *Id.* at 725, 405 P.3d at 665 (alteration in original) (quoting *State v. Steadman*, 855 P.2d 919, 924 (Kan. 1993)). Here, the detective merely described Shadden's death as "the murder." Although his description may have *implied* his opinion that Cooper committed the murder, he did not *directly declare* it. Because his testimony was not a direct opinion of guilt, the district court did not abuse its discretion by admitting it, nor prejudice Cooper by expressing its "approval" of the testimony before obligingly striking it.

*The district court did not improperly "interject[ ]" during cross-examination*

Cooper argues that the district court variously aggrieved him when it explained, upon the State's objections to his questions to expert witness Dr. Wong, that Cooper misquoted an earlier expert witness's

testimony about the bullet's trajectory. He recounts his cross-examination of Dr. Wong and his discussions with the court after the State's objections but omits significant portions, including when he twice read aloud from the medical examiner's report, which plainly contradicts his claims that the bullet "went through a rib." He also omits his admission to the court that "obviously, [the question] was subject to objection, and I would withdraw the question. I don't disagree."

Cooper's argument is meritless and borders on frivolous. The record disproves that the bullet "went through a rib" and that any witness testified that it did. We conclude that the district court's response to the State's objection and correction of what was plainly a misstatement of the evidence was not improper. *See United States v. Laurins*, 857 F.2d 529, 537 (9th Cir. 1988) ("A trial judge is more than an umpire, and may participate in the examination of witnesses to clarify evidence .... A judge's participation justifies a new trial only if the record shows actual bias or leaves an abiding impression that the jury perceived an appearance of advocacy or partiality." (citation omitted)).

*The district court did not abuse its discretion by denying Cooper's mistrial motion*

Cooper argues that the district court erred by denying his mistrial motion. He moved for a mistrial based on the district court's admission of the detective's murder testimony and its "interjecti[on]" during cross-examination.

We review a district court's decision on a mistrial motion for abuse of discretion. *Rudin v. State*, 120 Nev. 121, 142, 86 P.3d 572, 586 (2004). A district court may grant such a motion "for any number of reasons

where some prejudice occurs that prevents the defendant from receiving a fair trial." *Id.* at 144, 86 P.3d at 587.

In light of our conclusions that the district court did not abuse its discretion or err by admitting the murder testimony or responding to the State's objections, we conclude that the district court did not prejudice Cooper, and thus did not abuse its discretion by denying his mistrial motion.

*There is no error to cumulate*

Finally, Cooper argues that cumulative error warrants reversal. In light of our conclusions that the district court did not err, however, there is no error to cumulate. Accordingly, we

ORDER the judgment of the district court AFFIRMED.

_____, J.
Pickering

_____, J.
Parraguirre

_____, J.
Cadish

cc:   Hon. John Schlegelmilch, District Judge
      Justice Law Center
      Attorney General/Carson City
      Lyon County District Attorney
      Third District Court Clerk